## IDA M. GORHAM ET AL. v. J. J. SETTEGAST.

### Decided November 21, 1906.

**1.—Trespass to Try Title—Collateral Heirship—Proof.**

In trespass to try title one who claims by collateral descent must show who was last entitled, and then prove his death without issue; next, prove all the different links in the chain of descent which will show that the one who was last entitled and the claimant descended from the same common ancestor, together with the extinction of all those lines of descent which could claim any preference over the claimant. He must prove the marriages, births and deaths, and the identity of the persons necessary to fix title in himself, and the extinction of others who have, if in existence, a better title. He must prove that all the intermediate heirs between himself and the ancestor from whom he claims are dead, without issue.

**2.—Pedigree—Hearsay Testimony.**

Questions of pedigree, such as marriages, births and deaths of members of a family, may be proved by declarations of the deceased members of the family. To be admissible, however, such declarations must have been made ante litem motam. It is not necessary that litigation should actually have been begun at the time of the declarations; it is sufficient for their exclusion if a dispute or controversy is actually in progress. Byers v. Wallace (87 Texas, 509) discussed.

**3.—Absence—Presumption of Death.**

The presumption of death is raised by the unexplained absence of a person from his domicile for a period of seven years. Absence, in this connection, means that a person is not at the place of his domicile, and that his actual residence is unknown. The mere removal from a domicile in one State to a domicile in another State, at a place well known, even though no communication should be received from such person after the removal, is not such absence as will raise the presumption of death.

**4.—Trespass to Try Title—Tenant in Common.**

In trespass to try title a tenant in common is entitled to recover the entire estate as against a stranger.

**5.—Peremptory Instruction.**

It is only when the evidence is such as to admit of only one conclusion, or when ordinary minds can deduce from it no other than the one conclusion, that the trial court is authorized to withdraw the cause from the jury by instructing a verdict. Facts considered, and held to require a submission of the issues to the jury.

#### 6.—Deed—Insufficient Description.

Nothing passes by a deed except what is described in it, whatever the intention of the parties may have been; and, while parol evidence is often admissible to ascertain what lands are embraced in the description, such evidence can not make the deed operate on land not embraced in the descriptive words.

#### 7.—Same.

An instrument which, upon its face, is so vague and uncertain in its attempted description as not to furnish means of identifying the land sought to be conveyed, will not have the effect of conveying to the grantee an undivided interest in the entire tract out of which it was intended to convey a part by metes and bounds.

#### 8.—Same.

A deed which described the land intended to be conveyed as follows: "Beginning at the Northeast side of Eli Noland's survey; thence to the south line of said survey, containing 400 acres, to run off Eli Noland's tract, and adjoining the west line of Bond's survey," is void for uncertainty of description in the absence of evidence identifying Bond's west line.

#### 9.—Same.

A deed described the land attempted to be conveyed as follows: "In Harris county, Texas, and embraced in the following limits, which are to be hereafter more fully designated by actual survey and measurement, to wit: Commencing on northern side of Green's Bayou, where the eastern line of Thomas Marshall survey intersects the said bayou; thence running northerly with the aforesaid eastern line to the northern boundary line of the said Eli Noland's league; thence running eastwardly on the said northern boundary line to a point from whence running southerly to the aforesaid Green's Bayou, and thence westwardly midchannel of and with the said Green's Bayou, to the place of beginning, will be sufficient to embrace 400 acres . . . part of the headright league of Eli Noland." A witness testified that no part of the league touched Green's Bayou, and that Marshall's east line could not be located. Held, the deed was void for uncertainty.

#### 10.—Same.

A deed by an administratrix described the land attempted to be conveyed as follows: "1,612 acres of land, being a part of the headright league of the aforesaid Noland, deceased, by virtue of a patent No. 338 granted by the —— of Texas on the —— of ——, A. D. ——, lying and being situated on Green's Bayou in aforesaid county." The probate proceedings upon which the deed was based did not add anything to the description. Held, the deed being intended to evidence a judicial sale, the description therein was too indefinite to allow the instrument in evidence for the purpose of showing an outstanding title. And, even if admissible in connection with other evidence to show an equitable title, it was not admissible because the party offering the same did not connect himself with such equity.

#### 11.—United States Census—Evidence of What.

An original United States census roll is not admissible in evidence to prove that the persons therein named were alive at the time, nor to show what persons constituted the family, their ages, nor any other matter necessary to show pedigree and heirship.

ON REHEARING.

#### 12.—Conclusions of Fact—Practice.

It is not the province of a Court of Civil Appeals to file conclusions of fact in reversing and remanding a case.

#### 13.—Matters of Pedigree—Self-serving Declarations.

Declarations as to matters of pedigree made by a member of a family at a time when he would have an interest in making a false declaration would be regarded as self-serving, and inadmissible as evidence of the matters stated.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*A. C. Van Velzer* and *Lewis Fogle,* for appellants.—Unless the evidence is of such character that there is no room for ordinary minds to differ as to the conclusions to be drawn from it, the trial court is not authorized to take the questions of fact from the jury. Wallace v. Southern Cotton Oil Co., 91 Texas, 21.

Hearsay testimony is admissible to raise the presumption of death of a person after having been absent from his place of last residence, and unheard of for seven successive years. Art. 3372, Rev. Stats.; Primm v. Stewart, 7 Texas, 181; Nehring v. McMurrian, 94 Texas, 49; Yates v. Houston, 3 Texas, 433.

It is no objection to evidence of a declaration of a person, since deceased, as to matters of pedigree in his family, that such declaration would tend to establish the heirship of declarant, if the declaration was made ante litem motam. Fowler v. Simpson, 79 Texas, 614; Davidson v. Wallingford, 88 Texas, 619; Monkton v. Attorney General, 2 Russell and M., 159, 39 English Reprint, 357; Tillman v. Tarver, 1 Ryan and M., 141, 21 Eng. C. L., 719; Wharton on Ev., vol. 1, secs. 207, 214.

When the description in a deed is so indefinite that the calls in the instrument itself can not be located, nor the terms understood, as applied to the land in dispute it is patently ambiguous and void. Coker v. Roberts, 71 Texas, 601; Cook v. Oliver, 83 Texas, 562; Linney v. Wood, 66 Texas, 27.

Where an attempted description fails to designate a certain specific tract; that is, where no tract will answer the description, or where more than one tract will answer, the ambiguity is patent and the deed is void.

The statement under the first proposition of this assignment is adopted as the statement here. Hurt v. More, 19 Texas, 269; Barker v. Southern Ry. Co., 125 N. C., 596, 74 Am. St. Rep., 658; Schenk v. Evoy, 24 Cal., 104.

Where there is an attempt to describe a specific tract in a larger tract owned by the grantor, and the description is insufficient, the deed is wholly void, and does not convey the number of acres named, as an undivided interest in the larger tract. Dwyre v. Speer, 8 Texas Civ. App., 92; Dull v. Blum, 68 Texas, 299; Harris v. Shafer, 86 Texas, 314; Grogan v. Vache, 45 Cal., 613.

Oral testimony is not admissible to aid a description patently ambiguous. Linney v. Wood, 66 Texas, 26; Pfeiffer v. Lindsay, 66 Texas, 124; Norris v. Hunt, 51 Texas, 614.

When the description in the deed itself is too vague to identify the land, it can not be located by parol. Watson v. Baker, 71 Texas, 748; Booth v. Upshur, 26 Texas, 68; Harrison v. Hahn, 95 N. C., 28.

Adverse possession under a paper title, which is void for want of sufficient description, will not permit of constructive possession, and the adverse possession will only extend to that part of the tract actually occupied and improved. If the deed is valid, constructive possession will extend only to the acreage described in the deed. McKinzie v. Stafford, 8 Texas Civ. App., 124; Ivey v. Petty, 70 Texas, 178; Porter

v. Miller, 76 Texas, 593; Jones v. Menard, 1 Texas, 780; Jackson v. Woodruff, 1 Cow., 276.

A deed to a certain number of acres out of a larger number of acres in a yet larger tract, without describing any but the largest tract is too vague and indefinite to convey any title even as a voluntary conveyance. Mitchell v. Ireland, 54 Texas, 305; Wooters v. Arledge, 54 Texas, 396; Munnink v. Jung, 3 Texas Civ. App., 395; Ball v. Collins (Sup.), 5 S. W. Rep., 622.

An administrator's deed of less than the entire interest of the decedent in a specific tract of land is void. Harris v. Shafer, 86 Texas, 314; Munnink v. Jung, 3 Texas Civ. App., 395; Mitchell v. Ireland, 54 Texas, 305; Eberstein v. Oswalt, 47 Mich., 254.

The Probate Court had no authority of law to set aside the 640 acres of land to the widow six years after original grant of letters. Sayle's Early Laws, art. 1912, secs. 44, 45, 54; Crocker v. Crocker, 19 Tex. Civ. App., 297; Am. & Eng. Enc. of Law, 2d ed., vol. 11, p. 1124.

*Stewart, Stewart & Lockett,* for appellee.—In order for declarations as to heirship and pedigree to be admissible in evidence, it must be first shown that the declarant was related to the persons of whom he declared; that the declarant is dead; that the declarations were not self-serving and were made ante litem motam, and if it appears that the declarations, if true, would tend to prove the declarant to be the heir of the one of whom he is declaring, it is inadmissible. Byers v. Wallace, 87 Texas, 503; Turner v. Sealock, 54 S. W. Rep., 359; Lewis v. Bergess, 54 S. W. Rep., 609; Schott v. Pellerim, 43 S. W. Rep., 944.

The court correctly instructed the jury that plaintiffs had not shown heirship, because if there was a presumption of the death of Elizabeth Noland, afterwards O'Connor, and of her sons, Branch T. Archer Noland and Beckwith A. Noland, there would not be a presumption as to which died first, and which second, and which last, and would be no presumption that they died without being married and without issue, but where plaintiffs claim as collateral heirs, they have the burden, not only of showing that they are related, but how they are heirs, and to show each link in the chain so as to exclude others from the inheritance.

A deed which gives the number of acres conveyed and designates the league in which the land is situated, State and county, and shows how and in what part of the league the land is situated, contains a sufficient description, and is not void for uncertainty, and therefore the court correctly admitted in evidence the deed from Eli Noland to T. W. Marshall, also the deed from T. W. Marshall to J. G. Hardmeyer, also the deed from Hardmeyer to Peter Pfeiffer, and the deed from the widow and children of Peter Pfeiffer to J. J. Settegast. Slack v. Dawes, 3 Texas Civ. App., 520; Blackburn v. McDonald, 1 Texas U. C., 355; Wofford v. McKenna, 23 Texas, 45; Jones v. Powers, 65 Texas, 212.

A deed which purports to convey a given number of acres in a designated league is not void for uncertainty, but will convey an undivided interest to that extent in the land in the league owned by the grantor if he owns more than the number of acres conveyed, and will confer the right of selection on the grantee, but if the grantor owns only the num-

ber of acres conveyed or fewer than the deed purports to convey, in such event the deed will convey all that the grantor owns, and in either event the deed will pass title out of the grantor, even if the description is insufficient to protect the grantee therein against an innocent purchaser. Slack v. Dawes, 3 Texas Civ. App., 520; Mass v. Bromberg, 66 S. W. Rep., 468; Dohoney v. Womack, 20 S. W. Rep., 950; Byrn v. Kleas, 39 S. W. Rep., 892; Fontaine v. Bohn, 40 S. W. Rep., 637; Murphy v. Williams, 56 S. W. Rep., 695; Herman v. Likens, 90 Texas, 448.

The court correctly admitted in evidence the deed from Eli Noland by Elizabeth O'Connor, administratrix, to Frederick Andrews, for 1512 acres of land, and the deed from same to William Purvis for 100 acres of land, because said deeds contain sufficient descriptions, and are based on proper authority, and each of them purports to convey a specific number of acres in a defined tract, when taken in connection with the proceedings in the administration of Eli Noland's estate. Murphy v. Williams, 56 S. W. Rep., 695; Herman v. Likens, 90 Texas, 448; Aldridge v. Pardee, 60 S. W. Rep., 792; Mass v. Bromberg, 66 S. W. Rep., 468; Focke v. Garcia, 41 S. W. Rep., 187; Pierson v. Sanger, 93 Texas, 164; Macmanus v. Orkney, 40 S. W. Rep., 716; Dupree v. Frank, 39 S. W. Rep., 988; Taffinder v. Merrell, 65 S. W. Rep., 179; Watson v. McClane, 45 S. W. Rep., 177; Frazier v. Waco Building Association, 61 S. W. Rep., 134; Westmoreland v. Carson, 13 S. W. Rep., 559; Bassett v. Sherrod, 13 Texas Civ. App., 333; Smith v. Clay, 57 S. W. Rep., 74.

The deeds from Elizabeth O'Connor, as administratrix, to Frederick Andrews and William Purvis will have the effect of conveying the individual interest of Elizabeth O'Connor, and will also operate as deeds by her as survivor of the community, conveying the full title, even if they should be considered insufficient as deeds of the administratrix. Cope v. Blount, 14 Texas Ct. Rep., 636; Frisby v. Withers, 61 Texas, 139; Masterson v. Stevens, 37 S. W. Rep., 367; Stevens v. Masterson, 90 Texas, 425.

The Probate Court has power to set apart the homestead at any time after the grant of administration, so that it does not deprive creditors of their rights. Griffin v. Harris, 88 S. W. Rep., 495.

An original census roll, taken in the manner provided by law, is admissible in evidence to prove that the persons therein named were alive at the time and to show what persons constitute the same family, and their ages, and any other matter necessary to show pedigree and heirship. Howard v. Russell, 75 Texas, 176; Overall v. Armstrong, 25 S. W. Rep., 440; Lewis v. Marshall, 5 Peter, 470; MacDonnell v. Fuentes, 7 Texas Civ. App., 147; Culmore v. Medlenka, 44 S. W. Rep., 676.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by Clarence Johnson against J. J. Settegast in the ordinary form of an action of trespass to try title to 617½ acres of the Eli Noland survey situated in Harris County, Texas. On August the 22d, 1904, Mollie E. Noland and Ida M. Gorham intervened in the case claiming that they were the true and sole owners of the land sued for by Johnson. The claim to the land as pleaded by them in their petition of intervention is as follows:

"Mrs. Ida M. Gorham, C. H., W. L. and Miss Mollie Noland are the sole and only heirs at law and next of kin of Eli Noland, deceased, being the only grandchildren of Beckwith Noland who was the brother of said Eli Noland, the parents and grandparents all being dead, and all other nearer kindred, lineal and collateral of said Eli Noland also being dead. That Mrs. Lizzie Noland is the widow of S. P. Noland who was the father of Mrs. Ida M. Gorham; that Mrs. Ella Noland is the widow of Frank Noland, deceased, who was the father of said C. H., W. L. and Mollie E. Noland. That said Mrs. Ella Noland, C. H. and W. L. Noland have transferred and conveyed their interest in said land and premises to Mollie E. Noland, who is the owner and entitled to the possession of an equal, undivided one-half share thereof. Said Mrs. Lizzie Noland has conveyed to her daughter, Mrs. Ida M. Gorham, all her interest in said land and premises, and said Mrs. Gorham is therefore the owner and is entitled to the possession of the other equal undivided one-half of said land and premises."

Subsequently the petition of Johnson, the original plaintiff, was dismissed. The defendant Settegast answered interveners' petition by pleas of the three, five and ten years statutes of limitation and a cross bill, in the nature of an action of trespass to try title, against interveners for possession of the premises, and quieting his title thereto against interveners' claim.

On March the 16th, the intervener, Mollie E. Noland, suggested her marriage to W. W. Johnson since filing her petition in intervention, and, upon such suggestion, he was joined with his wife as a party plaintiff in the action; and he appeared and adopted the allegations in interveners' original petition.

It is thus seen that the interveners are the real plaintiffs in the case against the original defendant, Settegast.

The case was tried before a jury, whom the court instructed that the evidence was not legally sufficient to prove the heirship of the parties suing as interveners; and that the deeds in evidence showed that all title of Eli Noland had passed out of him and his heirs, and, thereupon, directed the jury to return a verdict for the defendant. From the judgment entered upon a verdict returned in obedience to such instructions the interveners have appealed.

There are thirty-three assignments of error insisted upon by appellant for reversal of the judgment. The principal questions raised by them are:

1. Did the court err in instructing the jury that the evidence was not legally sufficient to prove the heirship of the interveners?

2. Did the court err in instructing the jury that the deeds in evidence showed that all title of Eli Noland to the land in controversy had passed out of him and his heirs?

All other questions raised by the assignments are involved in and are simply subsidiary to those stated. It will, therefore, be unnecessary to take up and consider every assignment of error separately; but consideration of all will be given in determining the questions stated.

Before reciting the substance of the evidence upon which appellants seek to establish title to the property in controversy as the heirs of Eli

Noland, we will state what, under the law, it was necessary for them to prove in order to entitle them to recover.

It will be observed that they are claiming by collateral descent. One claiming by such descent must show who was last entitled, and then prove his death without issue; next prove all the different links in the chain of descent which will show that the one who was last entitled and the claimant descended from the same common ancestor, together with the extinction of all those lines of descent which could claim any preference to the claimant. He must prove the marriages, births and deaths, and the identity of the persons necessary to fix title in himself, and the extinction of others who have, if in existence, a better title. This is done by proving the marriage, births and deaths necessary to complete his title, and showing the identity of the several parties. He must prove that all the intermediate heirs between himself and the ancestors from whom he claims, are dead, without issue. (3d Wash. on Real Property (3d ed.), sec. 38; Abbots Trial Ev., sec. 24; 3d Elliott on Ev., secs. 2188, 2189; Anson v. Stein, 6 Iowa, 150; Skinner v. Fulton, 39 Ill., 484; Sprigg v. Moale, 28 Md., 497; Shriver v. State, 69 Md., 278, 4 Atl. Rep., 679.)

The evidence tends to show that Eli Noland, to whom the land in controversy was patented, died December the 17th, 1841, leaving his wife, Elizabeth Noland, and his two sons, Branch T. Archer Noland and Beckwith Noland, surviving him. It also tends to show that his brother, B. A. Noland, died in Harris County about twelve years later; that he left surviving him his wife and three sons, all of whom are dead; and that his only surviving descendants are his grandchildren Ida M. Gorham, Mollie E. Johnson, appellants, C. H. Noland and W. L. Noland, whose interest in the land in controversy is claimed by appellants through deeds from them. Eli Noland being seized of the property in question at the time of his death, the presumption is that it was of the community estate of himself and surviving wife. Therefore, when he died, his wife, Elizabeth, was the owner of one-half and his two sons of the other half of the property. It is not claimed by appellants that they were related by blood to Elizabeth, the surviving wife of Eli Noland. Therefore, for appellants to have inherited the property, or any of it, it was incumbent upon them to prove that all three of these parties who took title upon the death of Eli Noland are dead, and that the death of Elizabeth Noland occurred prior to the death of both Branch T. Archer and Beckwith Noland; for if they died first, Elizabeth, as their mother, inherited the interest that descended to them through their father in the property and, consequently, she being of no blood relation to appellants, they would have inherited nothing from her, but the property would have descended to her heirs. Elizabeth, the widow of Eli Noland, on December the 2d, 1842, married Edward O'Conner. It seems to be conceded that Branch T. Archer Noland died prior to 1848; for at the November term of that year of the County Court of Harris County, Elizabeth as widow of Eli Noland, for her use and use of her child, as an allowance, was awarded by the County Court 640 acres of the land of her deceased husband. Upon Branch T. Archer Noland's death (assuming from his minority he died without issue) his interest

in the property descended to his mother, Elizabeth O'Connor, and to his brother, Beckwith Noland.

Thus stood the title to the property, in its descent from Eli Noland, in 1848. So it will be seen, under the principles of law stated, that in order for appellants to show that it descended and vested in them, it was essential for them to prove that Elizabeth O'Connor died without issue of her second marriage, and that her son, Beckwith Noland, survived her and died without issue. Unless evidence was adduced which at least tended to establish such facts, there was no error in the court's instructing the jury to return a verdict for the defendant, upon the ground that plaintiffs had failed to show that the title to the property descended and vested in them by inheritance.

Now, as to the evidence offered by plaintiffs to prove such facts. On these issues Mrs. Gorham one of appellants, and her mother, Mrs. Cates testified substantially as follows:

That Beckwith, son of Eli Noland, also died in New Orleans in 1878, shortly after the death of his mother, Elizabeth. Witness says she knows these facts, because all her relatives discussed them; because Mrs. Pannell, who raised her father, told her so; because her uncles, aunts, cousins and father also stated it; because it was family history, and all of it was discussed at home; because her mother, father, his brother, his sister-in-law, all the children and the entire family talked it over, and she heard it from all of them; that these statements were made by them ever since witness was old enough to have a memory; that it was often discussed, and at all times, when discussed, the facts were stated in the same way, and their discussion was an every day occurrence; that her uncle, Frank Noland, received information from New Orleans of the death of the son and widow of Eli Noland; that her uncle Frank knew, of his own personal knowledge, Eli Noland's last son died in New Orleans; that the family made inquiries in New Orleans in 1878 about the death of the son and widow of Eli Noland, and he went over there to find out about it. Besides, Mrs. Cates testified: That the members of the family here occasionally heard from the widow and son of Eli Noland prior to 1878, while they lived in New Orleans; that their home was in New Orleans, and that since 1878 neither one had been heard from, except in the fall of that year a telegram was received from the son, stating the death of his mother, and about two months after the telegram was received, word came of the death of the son.

Cassamero Lopez, a witness 75 years old, who resides in New Orleans and had lived there all his life, testified that he knew Elizabeth O'Connor many years ago and at the time she resided in New Orleans where he saw her frequently. That was during the 60's and 70's, and that she was a woman of middle age at that time; that she died in the yellow fever plague in New Orleans in 1878, and that he knew this of his own knowledge; that during the year he knew her, she was a widow and told witness that both her husbands had died in Houston, Texas; that she had one child, a boy grown named Beck Noland. That "Beck" was his first name abbreviated; that "Beck" did not marry, and he died, also, the same year his mother died; that he was taken down with yellow fever about a month after his mother died and died at the hospital where she did. This witness having been asked where Mrs. O'Connor lived be-

fore the time of her residence in New Orleans, answered: "All I know is what she and her son told me. He said they lived in Houston when he was small; and his father had been scalped and killed in an Indian fight near Houston; that his mother married an O'Connor they said, and he died and she could not make a living on the farm near Houston and came to New Orleans. Mrs. O'Connor told me her name was Noland before it was O'Connor."

It is claimed, however, by the appellee that the testimony of Mrs. Gorham and Mrs. Cates as to what members of the family told them, is self-serving and should (appellee having objected to its introduction upon that ground) have been excluded under the authority of Byers v. Wallace, 87 Texas, 509, and that having been erroneously admitted, it should not be considered by the court. That questions of pedigree, such as marriages, births and deaths of members of a family, may be proved by declarations of the members of a family, which go to make family tradition and history, is an old exception to the rule which, ordinarily, excludes hearsay evidence. This rule rests upon the principle that natural effusions of those who talk over family affairs, when no special reason for bias or passion exists, are fairly trustworthy, and should be given weight by judges and juries, as they are in the ordinary affairs of life. To be admissible as evidence, such declarations, however, must have been made *ante litem motam,* for if made during the course of a controversy they are regarded as lacking in the ground of trustworthiness. Principle requires, however, that the dispute, if it is to exclude the statements, should have been more or less over the precise point to which the statements refer (as is illustrated in Byers v. Wallace, supra); else no bias could be supposed to affect it. It is not necessary that litigations should actually have begun at the time of the declarations. The element to be avoided is a bias in the mind of a declarant; and this is sufficiently probable if a dispute or controversy is actually in progress, even though it may not have reached the stage of legal proceedings. (2 Wigmore on Ev., secs. 1482, 1483.) It is the declarations which must be made *ante litem motam,* not the statement of those who heard them, that are evidence. If made before, the fact that they are repeated after the dispute arose, does not render them inadmissible. The declarant must have been a member of the family or so intimately related to it, and so situated, as to have knowledge of the fact in regard to which he made the declaration, and be either dead, or his testimony inaccessible, in order for his declaration to be admitted in evidence; for if alive, and his testimony can be produced, testimony as to his declarations is inadmissible, because the ground for its introduction as hearsay does not exist. It is, of course, incumbent upon the party who resorts to such declarations to prove the existence of a fact, to show that they are admissible under the principle of evidence stated. It reasonably appears from the evidence that some of the declarants whose declarations are testified to were dead and that, therefore, their testimony could not be obtained as to the facts stated in their declarations, and that such declarants were the members of or so related to Eli Noland's family as to make such declarations admissible in evidence, if no motive existed at the time they were made for them to state a falsehood, and we are inclined to the opinion that no such motive appears

to have existed in the minds of the deceased declarants when they made such declarations. These, however, were matters for the trial court to determine when the testimony as to the declarants was offered by appellants, and objections made by appellee to its introduction in evidence. And, since they were admitted, it is not for this court to ignore such declarations as evidence, in passing upon the question now under consideration.

The contention of appellants that the death of Mrs. O'Connor and her son Beckwith should be presumed from their continued absence for seven years from Houston, where they once resided, they not having been heard of during that period, can not be sustained. It is true, that a presumption of death is raised by the absence of a person from his domicile when unheard of for seven years. Absence, in this connection, means that a person is not at the place of his domicile, and that his actual residence is unknown. It is for this reason that his existence is doubtful, and that, after seven years of such absence, his death is presumed. But removal alone is not enough. The further fact that he has disappeared from his domicile, and from the knowledge of those with whom he would naturally communicate, so that his whereabouts have been unknown for seven years or upward, is necessary to raise the presumption. But when a person removes from his domicile in one State to establish a home for himself in another State or country, at a place well known, this is a change of residence, and absence from the last domicile is that upon which the presumption must be built. If alive when last heard from at his last domicile, the presumption is that life continues. (Francis v. Francis, 180 Pa. St., 646, 37 Atl. Rep., 120.) Therefore, it being shown that Mrs. O'Connor and her son Beckwith had left their residence in Texas for New Orleans and had become domiciled there, their death can not be presumed from their seven years' absence from Texas, even though it should appear that they were unheard of by their family, or those who knew them in this State, during that period. We think, too, that the telegram referred to in the testimony recited, if evidence at all of what was stated in it, was the best evidence; and statements as to its contents were inadmissible in evidence, unless it was shown that the original telegram was lost, or its nonproduction in court accounted for in such a manner as to make secondary evidence of its contents admissible. We have thus ruled upon the presumption of seven years' absence, and upon the admissibility of the contents of the telegram in evidence, in view of another trial in the event the judgment before us should be reversed and the cause remanded. We are satisfied, however, that there was competent testimony, as is shown by the above recital of the evidence, tending to show that both Mrs. O'Connor and her son Beckwith died without issue in the city of New Orleans, Louisiana, in 1878; and that the death of the mother was prior to that of the son, and that their declarations, as testified to by the witness Lopez, reasonably tend to establish their identity. Such declarations, if made as testified to, were certainly *ante litem motam.*

If, as the testimony tends to show, Mrs. O'Connor and Beckwith Noland died, in the order of time stated, without issue, the estate of inheritance of Beckwith Noland vested upon his death in his paternal and

maternal kindred as provided by sec. 4, art. 1688, Rev. Stats. of 1895. The evidence reasonably tends to show that his paternal grandparents are dead, and that appellants and those under whom they claim, bear such kinship to Beckwith Noland on the paternal side of his family as entitle them to the moiety of his (Beckwith Noland's) paternal kindred. The fact that it is not shown by the evidence that his maternal kindred are extinct will not prevent the appellants from recovering the property, if the evidence should be found by a jury sufficient to vest the moiety of Beckwith's paternal kindred in them; for if there were any maternal kindred, appellants would be tenants in common with them, and, as such, entitled to recover the entire estate. (Pilcher v. Kirk, 60 Texas, 162; Contreras v. Haynes, 61 Texas, 104; Frisby v. Withers, Id. 139; Telfener v. Dillard, 70 Texas, 139; Wilcoxson v. Howard, 62 S. W. Rep., 803; Karnes v. Butler, Id. 953.)

It is only when the evidence is such as to admit of only one conclusion, or when ordinary minds can deduce from it no other than the one conclusion, that the trial court is authorized to withdraw the cause from the jury by instructing a verdict. We are of opinion, therefore, that the court erred in peremptorily instructing the jury that the evidence was not legally sufficient to prove the heirship of appellants.

This brings us to the consideration of the second question—Did the court err in instructing the jury that the deeds in evidence showed that all title of Eli Noland to the land in controversy had passed out of him and his heirs?

An instrument, purporting to be a deed, made by Eli Noland on August 7, 1840, to T. W. Marshall, described the land sought to be conveyed as follows: "200 acres of land, lying and being situated on the Spring Fork of Green's bayou, and described as follows: Commencing at the northeast line of Eli Noland's league, and running across said league to the northeastern boundary line; and bounded on the northwest by a line across said league, and leaving on the northwest end of said league a reservation to Eli Noland of 1,000 acres of land; thence from said line southeast, making 200 acres, inclusive, with all the improvements thereon being the same land occupied by said Thos. W. Marshall;" and other deeds, containing the same description, extending from Marshall down to the appellee were introduced in evidence, over the objection of appellants that such instruments were void for uncertainty of description, by the appellee. Objection to parol evidence introduced by appellee to aid the description was also made by appellants, upon the ground that the ambiguity in the deed was patent and the defect, on that account, could not be cured by the help of extrinsic evidence, further than to show what land was occupied by T. H. Marshall.

It is apparent from the face of the instruments that no land is described by them, and that none can be found on the ground from such description, save that in possession of Marshall, when the deed to him was executed. In other words, if the description is taken, extrinsic evidence can only show what land was in Marshall's possession when the deed to him was executed. It is well-settled law that nothing passes by a deed except what is described in it, whatever the intention of the parties may have been. (Minor v. Powers, (Texas Sup. Ct.), 26 S. W. Rep., 1071; Dill v. Blum, 68 Texas, 299; Harris v. Shafer, 86 Texas,

315; Thayer v. Finton, 108 N. Y., 394, 15 N. E. Rep., 615; Coleman v. Manhattan Beach Co., 94 N. Y., 229; Jones v. Smith, 73 N. Y., 205; Andreu v. Watkins, 26 Fla., 390, 7 So. Rep., 876; Martindale on Convey., sec. 87) and, while parol evidence is often admissible to ascertain what lands are embraced in the description, such evidence can not make the deed operate upon land not embraced in the descriptive words. (Minor v. Powers, supra; Coleman v. Manhattan Beach Co., supra; Prentice v. Stearns, 113 U. S., 435, 28 L. ed., 1059.) The principle that a grant of a designated number of acres in a survey, or tract of land, owned by the grantor containing a greater quantity of land than the number of acres designated, has the effect to confer title in the grantee to an undivided interest in the entire survey or tract to the extent of the quantity of land named in the deed, as enunciated in Wofford v. McKenna, 23 Texas, 45; Blackburn v. McDonald, 1 Texas U. C., 355; Slack v. Dawes, 3 Texas Civ. App., 520; Mass v. Bromberg, 66 S. W. Rep., 486; Dohoney v. Womack, 1 Texas Civ. App., 360; Byrn v. Kleas, 15 Texas Civ. App., 211; Fontain v. Bohn, 40 S. W. Rep., 637; Murphy v. Williams, 56 S. W. Rep., 695; Herman v. Likens, 90 Texas, 448; Morrison v. Hazzard (Sup. Ct. Tex.), 92 S. W. Rep., 35, and insisted on by appellee, has no application to a deed which undertakes to describe land by metes and bounds, when such description is of such patent ambiguity as to render the deed void. It is essential to the validity of conveyance of land, in this State that it should be made by an instrument in writing. Such an instrument which is, upon its face, so vague and uncertain in its attempted description as not to furnish means of identifying the land sought to be conveyed, does not meet such essential requirement. It is for parties, and not courts, to make deeds of conveyance. Men are presumed to be able among themselves to make deeds expressive of their intentions, and if they fail to do so, or to furnish the means by which their intention can be determined, it would be an usurpation of authority for courts to undertake to make deeds for them. We are of opinion therefore that the deeds in question were only admissible in evidence for the purpose of proving that land in possession of Marshall when the deed to him was executed was embraced by each instrument, and that its description could not be aided by parol, further than to show what land he was in possession of at that time. This disposes of those assignments of error which complain of the court's admitting such instruments, and parol testimony to aid the defective description contained in them, in evidence.

The remaining assignments have relation to the introduction in evidence by the appellee, for the purpose of showing an outstanding title, of a number of deeds and parol testimony concerning them, which purport to convey, in the aggregate, 4,428 acres of the Eli Noland league.

The first of these instruments is from Eli Noland to B. A. Noland, is dated August 4, 1840, and describes the land as follows: "Beginning at the N. E. side of Eli Noland's survey; thence to the south line of said survey, containing 400 acres, to run off Eli Noland's tract, and adjoining the W. line of Bond's survey." Its introduction in evidence was objected to by appellants upon the grounds, *inter alia*, that it contained no valid description and was, therefore, void, and that the calls

could not be identified. This objection is good, unless the land could be identified by the "West line of Bond's survey." It was not shown where this line was. It is true that Bond's deed was introduced in evidence by the appellee and that it describes the land sought to be conveyed thereby as follows: "Lying and being situated on the southwest fork of Green's bayou, commencing at a large oak marked as a line tree, near a gully on the south side, being said Fritz Henry Bond's northeast corner; thence east to a stake, thence north to bayou; thence west along the bayou to place of beginning of said tract of land, to contain 300 acres according to survey and plot made by James G. Reed;" but the "large oak marked as a line tree" was not identified, nor its actual position shown by any evidence introduced. In the absence of such evidence there was no identification of the land. Therefore, the principle that where there are two parcels of land in a given area the location of one necessarily fixes the place of the other (Morrison v. Hazzard, 92 S. W. Rep., 35) can not be invoked to aid the description in the deed from Eli Noland to B. A. Noland; and the description, not being in itself sufficient to identify the land, was not aided by the reference to "Bond's south line." Evidence might have been introduced to show the location of such line, but it was not. In the absence of such evidence the description contained in the deed under consideration is too vague and indefinite to identify the land intended to be conveyed. In the absence of such evidence, such instrument should not have been held effective. For the same reason—that is, the absence of evidence to identify the beginning corner of the Bond 300 acres—the deed from Eli Noland to Bond should not have been given effect upon the issue of outstanding title. The same may be said of the deed from B. A. Noland to Pannell and Hindy, dated January 18, 1847.

Another of those instruments is a deed from Eli Noland to B. A. Noland, dated August 14, 1841, which contains the following description: "In Harris County, Texas, and embraced in the following limits, which are to be hereafter more fully designated by actual survey and measurement, to wit: Commencing on northern side of Green's bayou, where the eastern line of Thomas Marshall survey intersects the said bayou; thence running northerly with the aforesaid eastern line to the northern boundary line of the said Eli Noland's league; thence running eastwardly on the said northern boundary line to a point, from whence running southerly to the aforesaid Green's bayou, and thence westwardly midchannel of and with the said Green's bayou to the place of beginning, will be sufficient to embrace 400 acres . . . part of the headright league of Eli Noland." It was introduced by appellee over the appellants' objections that no evidence was introduced which identifies the calls thereof, and that the description contained in the instrument is so patently ambiguous as to render it void. No parol testimony was given to locate the land attempted to be conveyed, except that of the witness Stimson, who testified that no part of the league touched Green's bayou; and that without Marshall's east line were located, which could not be done, the land was impossible of location from the description in the instrument. Therefore such deed was insufficient to show an outstanding title to the land.

The appellee, over objections of appellants, offered in evidence for

the purpose of showing an outstanding title, a deed executed on March 14, 1849, by Elizabeth O'Connor (formerly Elizabeth Noland) widow of Eli Noland, deceased, as administratrix of the estate of said decedent to Frederick Andrews, which describes the property sought to be conveyed thereby as follows: "Sixteen hundred and twelve acres of land, being a part of the headright league of the aforesaid Noland, deceased, by virtue of a patent No. 338 granted by the ——— of Texas, on the ——— of ———, A. D. ———, lying and being situated on Green's bayou in aforesaid county." The objections interposed to its introduction were: (1) That it was void for want of sufficient description; (2) authority in the administratrix to make the sale was not shown; (3) the sale was not based upon a valid order; (4) the Probate Court was without authority or jurisdiction to direct such sale; (5) the administratrix was without authority to sell and the Probate Court without power to order the sale of an undefined acreage out of a large tract, also undefined; and (6) the deed purports to convey an undivided interest in an undefined tract in the Eli Noland league, whereas the estate owned the fee in a larger specific tract therein. The probate proceedings upon which the deed is based do not add anything to the description; for neither the petition for the order of sale nor the order of sale refers to any land in the Noland league; nor does the inventory to which the petition refers, nor the return of sale, nor the decree confirming it. The evidence shows that the estate of Eli Noland did not, at the time the deed was made, own the entire league survey; for one-third or 1,476 acres of it had been conveyed by Eli Noland to Peter W. Gray by a deed which accurately describes the part conveyed by metes and bounds.

When it is considered that the deed in question was intended to evidence a judicial sale, where the authority of the administratrix, as well as the Probate Court itself, was limited by the law from which it is derived (Wooters v. Arledge, 54 Texas, 397; Munnink v. Jung, 3 Texas Civ. App., 395), it must be held that the description contained in the deed is too indefinite to allow the instrument in evidence for the purpose of showing an outstanding title. (Harris v. Shafer, supra; Mitchell v. Ireland, 54 Texas, 305; Eberstein v. Oswald, 47 Mich., 254.) If it can be said that it may be sufficient, in connection with other evidence, to show an equitable title, it would not avail the appellee because he does not connect himself with such equity. The same may be said in regard to the deeds from Elizabeth O'Connor as administratrix to William Parris and to J. W. Schrimpf. Besides, the authority of the Probate Court to set aside to her and her minor son, as an allowance, 640 acres of the land six years after grant of original letters of administration may well be questioned (C. & W. Dig., arts. 752, 753; Crocker v. Crocker, 19 Texas Civ. App., 297), as well as her right to convey her minor son's interest in the land allowed, in the absence of an order of the court expressly authorizing it.

What we have held in regard to the deeds introduced by appellee to show an outstanding title sufficiently demonstrates that the court below erred in peremptorily instructing the jury to return a verdict for defendant upon the ground of an outstanding title to the premises in controversy. Such of the deeds as were not absolutely void on account

of patent ambiguity of description, and were of such character as to admit of extraneous evidence to show the lands intended to be conveyed by them, did not warrant the court, when considered in connection with such evidence, in giving such peremptory instruction as to the lands sought to be conveyed by them; for it did not appear as a matter of law where the lands were situated, and it was a question for the jury to decide, in the light of such parol evidence, whether any land was conveyed by such deeds, and where it was located. But as the quantity of land which appellee claimed was embraced by deeds which we have held void exceeds the number of acres involved in this suit, and as it requires all the land claimed to have been conveyed by such void deeds to show an outstanding title to any particular part of the land sued for, and as it is not claimed that they cover the part in controversy it becomes immaterial whether the description in such other deeds can be so aided by parol as to show that certain portions of the league upon which the land sued for is situated were conveyed by such instruments or not; and it is therefore unnecessary for us to consider whether the extrinsic evidence offered to aid such defective descriptions was admissible; for, in view of what we have held, in regard to the absolute nullity of certain deeds, the question of outstanding title can not arise upon another trial.

The appellee has filed cross-assignments of error, which, in view of another trial, it becomes necessary for us to consider. The first is "that the court erred in excluding from the evidence original census of the United States for the year 1850, offered in evidence by appellee." The proposition asserted under this assignment is: "An original census roll, taken in the manner provided by law, is admissible in evidence to prove that the persons therein named were alive at the time, to show what persons constitute the same family, and their ages, and any other matter necessary to show pedigree and heirship." We can conjure up no principle that would authorize a census roll to be taken as evidence tending to prove any such facts." Official registers are not in general evidence of any fact not required to be recorded in them, and which did not occur in the presence of the registering officer. Thus, a parish register is evidence only of the time of a marriage and its celebration *de facto,* for these are the only facts necessarily within the knowledge of the party making the entry. So a register of baptism, taken by itself, is evidence only of that fact. Neither is the mention of the child's age in the register of christening proof of the day the child was born." (1 Greenl. Ev., sec. 493. See also, Hegler v. Faulkner, 153 U. S., 109.) A school census is not admissible in an election contest to show the ages of persons voting at an election. (Edwards v. Logan, 70 S. W. Rep. (Ky.), 852.) The enumerator of the census knows nothing of the facts as to the matters he records in the roll (McLane v. Paschal, 74 Texas, 26); he obtains all the data from others, and, many times, from those who know as little in regard to their truth as he. If rights of property should be made to depend upon such a record they would hang upon a thread that could be broken by the slightest whisper. The census is evidence of population, such as the population of a town, and judicial notice may be taken of such fact. But further than this, it

does not seem to be evidence. Certainly it has never been held evidence of the facts asserted in appellee's proposition.

The other cross-assignment, which complains of the court's failure to suppress the deposition of the witness Lopez, is not well taken.

The judgment of the District Court is reversed and the cause remanded to be tried, as to the matters discussed, in accordance with this opinion.

*Reversed and remanded.*

ON MOTION OF APPELLANTS FOR ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW; AND OF APPELLEE FOR REHEARING.

The motion of appellants insofar as it asks for additional conclusions of fact is overruled. It was not the intention of the court to find any conclusion of fact or to express any conclusion in regard to the facts. The intention of the court was simply to demonstrate, by a recitation of so much of the testimony as was necessary, that the case should not have been withdrawn from the jury, as was done by the trial court in peremptorily instructing a verdict for the defendant. It was only for that purpose any of the evidence was stated or commented upon; and if the court went beyond it, and said anything that could be considered as expressive of a conclusion of fact it was foreign to its intention, and must be considered as withdrawn. And as it is not the province of this court to file conclusions of fact in reversing and remanding a case we have overruled that part of appellants' motion which asks us to file additional conclusions of fact. Such part of their motion as calls for additional conclusions of law, as may be deemed of importance, will be passed upon in connection with our consideration of appellee's motion for rehearing.

Objection is made in appellee's motion for rehearing to the statement, in the original opinion, "it seems to be conceded that Branch T. Archer Noland died prior to 1848." While the statement may not have been justified by anything said in appellee's brief, and for that reason ought not to have been made, the evidence tended so strongly to indicate that his death occurred prior to that time, that we do not think appellee can be prejudiced by it, when considered in view of the purpose for which it was made.

We can see no reason for receding from our holding that the census roll of 1850, was not admissible as evidence tending to show the fact of anything appearing in it. Everything stated in such a document must be obtained by the enumerator of the census upon the information of some one else, and to admit it as evidence of the truth of its contents would be a palpable violation of the rule inhibiting the introduction of hearsay evidence, inasmuch that it does not fall within any of the exceptions to the rule, and is clearly against the principle upon which it is grounded. To permit statements contained in such an archive to be used as evidence in the trial of a cause between individuals, would, in many instances, be to destroy the personal or property rights of individuals by something never intended to affect them.

In what was said in our original opinion in regard to the admissions of declarations of deceased members of a family as to matters of family

history, regarding marriages, births, deaths and the like of the declarant's family or those clearly connected with him, the admission of the evidence of no particular witness who testified to such declarations was passed upon. We simply meant to be understood as holding that there was such evidence, which, in connection with other testimony, .was sufficient to carry the case to the jury upon the issue of appellants' heirship. Nothing could have been more foreign to our intention than to trench upon the rule laid down by the Supreme Court in Byers v. Wallace, 87 Texas, 503, and followed in Turner v. Sealock, 21 Texas Civ. App., 597; Lewis v. Bergess, 22 Texas Civ. App., 253; Schott v. Pellerim, 43 S. W. Rep., 945; Summerhill v. Darrow, 94 Texas, 75; Jamison v. Dooley, 98 Texas, 209; Overby v. Johnston, 94 S. W. Rep., 131. For we regard the rule, "that declarations are admissible to prove the facts of death, birth and marriage in all cases where they are the subjects of investigation, under the same limitations as would apply in cases of pedigree—that is, such declarations must have been made before the beginning of the controversy and the declarant must be dead at the time the testimony was offered," too well established in this State to admit of question. It need not be said that this rule excludes the admission of such declarations of living parties. If alive, the party who made the declaration must testify himself as to the fact declared by him; and, under no principle, can his declaration of such fact be testified to by another, unless he be a party to the suit and such declaration is against interest or operates as an estoppel.

Under appellants' theory of this case, and there is evidence to support it, neither they, their ancestors nor any member of their immediate family had any interest in the subject matter of this litigation until after 1878, when it is claimed that Beckwith Noland died. Conceding *pro hac vice*, that he is dead, none of them could have any selfish motive in making declarations as to the death of any descendant or heir of Eli Noland, while he was living; for until his death, they could not acquire title by inheritance to the property involved in this suit. But after his death, his next of kin, or he who would take title to his property by inheritance, would have an interest in making a false declaration, and such declarations, under the decisions of this State, would be regarded as self-serving and inadmissible as evidence of the matters stated by the declarant.

Proceeding upon the theory that Beckwith Noland was the last lineal descendant of Eli Noland and that he died in 1878, it would seem that any declarations Mrs. Ida Gorham may have heard made by either her father or uncle Frank must have been made after Beckwith's death, for she was born the same year that it is claimed he died, and her first recollection of such declarations was when she was about ten years of age, and her testimony as to them would be inadmissible; because they were, under the rule of this State, made by parties who would be the inheritors of the property in controversy if their declarations were true; thus making evidence, if their declarations were considered as such, to vest title in themselves. The same may be said of the testimony of Mrs. Cates in regard to any declarations made by her husband Frank P. Noland, or his brother Sam P., after the time appellants' claim Beckwith Noland died; but any declarations she may have heard made

by either of them prior to that time, which would fall within the principle upon which the rule admitting such declarations is grounded, her testimony as to them would be admissible.

It occurred to us that, under the rule announced in Byers v. Wallace, as extended in the case of Overby v. Johnston, supra, Mrs. Pannell occupied such an intimate relation to the Noland family as would render her declarations as to matters of family history admissible in evidence. Certainly her declarations can not be regarded as self-serving, for she had nothing to gain by making them.

We have said this much in deference to the request of counsel for either party, contained in these motions, for more specific conclusions upon the question of the admissibility of declarations of deceased members of the family in regard to matters of its history; and not that we entertained any doubt as to the understanding of the law upon the subject by the trial judge or of his ability to correctly apply it on the trial of the cause.

In appellee's motion our attention is called to an error in the original opinion in the statement of the description of the land as contained in the deed from Eli Noland to T. W. Marshall. Instead of the land being described as "commencing at the northeast line of Eli Noland's league and running across said league to the *northeastern* boundary line," etc., the description is, "commencing at the northeast line of Eli Noland's league and running across said league to the *southwestern* boundary line," etc. It is due to ourselves to say that the description as given in our opinion was copied just as it appears in appellants' brief, and that, while the correct description is given in the brief of appellee, our attention was not specifically called to the misdescription in appellants' brief by the brief of the appellee, and, not noticing the discrepancy as to the description as contained in the briefs, we never examined the stenographer's report of the testimony to find out how the land was described in it. We are glad that appellee's counsel called attention to the error and that we have an opportunity of correcting it, for it is quite material.

As it appears in the original opinion, there can be no doubt among lawyers that the ambiguity is patent and of such nature as to render a deed containing it nugatory. But as it really appears in the deed, we think it equally clear that the ambiguity is latent and can be rendered certain by the introduction of parol testimony to show what land was really intended by the parties to be conveyed by the instrument. It is hardly necessary to say that a latent ambiguity occurs when the description in the deed appears sufficiently certain, free from ambiguity, but the ambiguity is produced by something extrinsic, or some collateral matter outside of the instrument. When a description is apparently clear and complete (as the one in question), yet when it is applied to the land it appears that the words are applicable to different things, and there is nothing in the deed to show which is meant, extrinsic evidence is admissible to show the true meaning of the words used. The identical monument or boundary referred to in a deed is always a subject of parol evidence, and, when disputed, it is always left to the jury to say what was the actual boundary intended. The assertion of appellee's counsel that when it developes that the lines of the league run

with the cardinal points of the compass, it becomes apparent that the tract can not be ascertained from the calls of the deed, clearly shows a latent ambiguity, which requires parol evidence to show what land was intended by the parties to the deed to be conveyed. A better illustration of a latent ambiguity can hardly be given than is shown from the language quoted from appellants' reply to appellee's motion for a rehearing on this question. It need not be said that the correction thus made of the statement of the description as made in the original opinion, renders what was said, in regard to the invalidity of the deed by reason of a patent ambiguity in the description of the land, in that opinion, of no effect. The question whether appellee will be able to prove what land was really intended to be conveyed is a question, of course, for the jury. If he can show it by parol evidence he has the right under the law to do so; but it does not necessarily follow from his *right* to show it in this manner that he can do so. Whether he can make such proof, is a question of fact for the jury to determine from the evidence he may introduce.

When the original opinion is taken in connection with what has been said in disposing of this motion, we think the other points raised are sufficiently discussed to enable the District Court to properly dispose of them should they arise on another trial.

Appellee's motion for a rehearing is overruled.

*Overruled.*

February 13, 1907, writ of error dismissed for want of jurisdiction.