## WALKER v. AYERS et al. (No. 810.)

(Court of Civil Appeals of Texas. Beaumont. May 6, 1922. Rehearing Denied June 6, 1922.)

1. **Boundaries ⬳40(1)—Evidence sufficient to raise issue as to correct location of corner.**

In a boundary suit, evidence *held* sufficient to raise an issue in favor of plaintiff as to the correct location of the northwest corner of the tract from which plaintiff's land was taken.

2. **Vendor and purchaser ⬳231(1)—Party buying with knowledge of prior recorded deed not innocent purchaser as to the description in the first deed.**

Where an intelligible deed of March 11, 1839, was fully recorded before the grantor's administrator made a deed to another on June 29, 1846, the second purchaser was not an innocent purchaser against the description in the first deed.

3. **Vendor and purchaser ⬳231(3)—Record of prior deed puts party on notice of title claimed thereunder.**

Where plaintiff claimed land by mesne conveyance from B., who acquired title from N. on March 11, 1839, and defendants claimed title from a deed of N.'s administrator on June 29, 1846, the record of plaintiff's deed put defendant and those holding under him upon notice of B.'s title, and if due diligence and reasonable inquiry by defendant and those under him would have shown the monuments described by the surveyor in his field notes to the B. tract were the ones referred to in the field notes made by the surveyor in the deed from N. to B., plaintiff would be entitled to the land if he could locate the corner of B. tract.

4. **Vendor and purchaser ⬳242—Where party claiming title to land had no legal title until after deed to another was executed, burden on him to show that other bought with notice of his interest.**

Where plaintiff claimed title by a mesne conveyance from N. to B. on March 11, 1839, and defendants claimed through a deed June 29, 1846, from N. to G., in which title emanated from a contract entered into by N., as owner of the land certificate, with another to locate the land certificate which was assigned to G., G. not having a legal title to any part of the land until long after the other deed had been executed and recorded, the burden rested on

him to show that B. bought with notice of his interest.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit in trespass to try title by Margaret Walker against J. W. Ayers and others. From judgment for defendants, plaintiff appeals. Reversed and remanded.

Hutcheson, Bryan & Dyess and Newell Walker, all. of Houston, for appellant.

E. P. & Otis K. Hamblen, Lewis Fogle, Maurice Hirsch & Allen Hannay, and Meyer C. Wagner, all of Houston, for appellees.

WALKER, J. This was a suit in trespass to try title by plaintiff in error, hereinafter designated as appellant, against defendants in error, hereinafter designated as appellees, involving 127.02 acres of the Eli Noland league in Harris county, Tex. The land in controversy is a part of a 300-acre tract deeded by Noland to Fitz Henry Bond on the 11th day of March, 1839, by the following field notes:

"Lying and being situated on the S. W. fork of Green's bayou. Commencing at a large oak mkd. as a line tree near a gully on the S. side being said Fitz Henry Bond's N. W. corner; thence running S. to Eli Noland's line; thence E. to a stake; thence N. to the bayou; thence W. along the bayou to the place of beginning, said tract of land to contain 300 acres according to a survey and plat made by James G. Reed and which for the more particular identification of said property is made a part of this title, and the said Eli Noland declares that he is the owner of said property being part of his headright."

On the 6th day of December, 1839, Bond conveyed the 300 acres to Augustus Gerard; on the 18th day of July, 1870, Gerard conveyed the 300 acres to Matthew B. Milner; on the 22d day of September, 1906, Matthew B. Milner and his attorney in fact, M. L. Weeks, conveyed 275 acres of the Bond 300-acre tract to appellant. The land in controversy is a part of the 275 acres conveyed to appellant. Defendants in error hold under a deed from the administrators of the estate of Eli Noland to Judge Peter W. Gray, dated the 29th day of June, 1846, conveying him the east one-third of the Noland league. The deed from the administrators contained the following recitation of facts:

"That whereas on the tenth day of February, A. D. 1838, the said Eli Noland made and executed his certain agreement in writing or bond with the John D. Alston, by which he agreed that, in consideration of the sum of one hundred dollars to him paid by said Alston, and that said Alston, among other things, would pay the expenses of locating, surveying, and obtaining a patent for one league of land the Headright claim of said Noland to be located on Green's bayou in Harris county, he would convey to said Alston or his assigns the one-third part of the said league of land to be taken from the upper or lower part of the same by a line running parallel with the upper or lower line of the league:

"And whereas the said agreement or bond by written assignment passed from said Alston to one Peter W. Gray, by whom the agreements of said Alston were finally fulfilled and completed by his obtaining a patent from the Republic of Texas for said league of land on Green's bayou, which patent is numbered three hundred and thirty-eight (No. 338) bears date the first day of November, A. D. 1844, and is signed by Sam Houston, president, and Thos. M. Ward, commissioner."

It was the contention of appellant that her land conflicted with the Peter W. Gray tract, and, being the senior survey, should prevail. Appellees contend that the Bond tract was located further west than the location claimed by appellant, and did not conflict with the Gray land. The trial was to a jury, and on the conclusion of the evidence, under instructions from the court, the jury returned a verdict for appellees. The testimony offered was sufficient to raise the following issues:

(1) About 1870, J. J. Gillespie, county surveyor of Harris county, surveyed out the Bond 300 acres, making the following field notes:

"Field notes of the survey of 300 acres of land known as the Bond survey out of the southern part of a league of land, originally granted to Eli Noland situated on Hall's bayou about —— miles N. E. from the city of Houston. Beginning at a white oak 30 in. dia. with a large blaze on the east, a small blaze on the west, the letter B on the south, and standing 105 east and 24 vrs. north of the mouth of a large gully and 38 vrs. south of Hall's bayou; thence south 997 vrs. to a stake in the south boundary line of the Noland league from which a gum 6 in. dia. mkd. B bears S. 9 deg. W. 2⅓ and a post oak 6 in. dia. mkd. B bears N. 76½ deg. E. 2⅔ vrs. standing on the north side of a glade; thence east along the south boundary line of the Noland league at 794 vrs. passed P. W. Gray's S. W. corner at 1,327 vrs. in all a stake from which a gum 10 in. dia. mkd. B bears S. 69 deg. W. and a pine 18 in: dia. mkd B bears N. 45 W. 6 vrs.; thence north 1,150 vrs. to an Elm tree 10 in. dia. mkd. B on the south and standing about 4 vrs. from the middle of Hall's bayou; thence up Hall's bayou with all its meanders to a stake from which a birch 20 in. dia. mkd. B on the south side bears S. 30 W. 4⅔ vrs. and a birch 6 in. dia. bears S. 25 deg. E.; thence south 38 vrs. to the above-mentioned white oak or place of beginning."

(2) In the early 80's, J W. Gillespie, son of J. J. Gillespie, helped his father survey land west of the Bond tract, which had a common line with the west boundary line of the Bond tract. At that time a large oak marked B was standing on what his father recognized as the west boundary line of the Bond tract. He said:

"I know and have had occasion to run the lines of what is known as the Fitz Henry Bond 300 acres survey in the Noland league. I got acquainted with the west line of what is claimed as the Bond in the early '80's, at the time that W. T. Long, and others sold what is known as the B. A. Noland 400-acre tract on the south side of the league to a fellow by the name of George Gogle. I surveyed the east 200 acres of the 400; that is with my father. I helped him do it when Mr. Long sold to Gogle. That was my first time in there, was with my father, on the Bond tract. We were running the George Gogle land and when he passed the big white oak marked B, he just said that was what he had known as the Bond west line.

\* \* \*

"The white oak that is called for in there at the northwest corner near that gully was not there in 1912, neither was the stump there. When I was with my father in the early '80's, when we made the Gogle survey I saw a white oak at that point, marked B, but that oak was not there when I made the survey in 1912; neither was the stump there; I looked for it. But a few years previous to that I was doing some work right north of there in the north end of the Bond 400 acres, owned now by Mr. Ben Reisner, and there were parts of the stump there; that was about 1908 or 1909. \* \* \*

"[Explaining sketch:] This tram coming in on the curve here from the east was one built by Mr. Hirsch. It continued on up here and went across the bayou, and went on over to Green's bayou. The Hirsch tram I have got here never touched the Fitz Henry Bond, as claimed by the plaintiff in this case. That tram is probably 100 or 120 yards east of Dennis McIntire's house. The Kennery dump coming up from East Houston right after it crossed the south line of the Noland and gets into the Bond, claimed, it ran right across the east line of it and connected with the Hirsch tram, and then they both used the same tram from the point of intersection on up the bayou. The point of intersection of the Hirsch and the Kennedy trams is east of the Bond 300 acres.

\* \* \*

"In the '80's, before that oak tree was cut down, it was about 100 varas east of a gully, and the line runs into a bayou exactly 105 varas east of the mount of what is known as Kennedy gully. Kennedy gully is the next gully that I know of going into Hall's bayou; there are gullies above that that are larger where they go into the bayou than Kennedy gully, but they are short. The Kennedy bayou is one of seven drainage ditches running west, emptying into Kennedy gully."

(3) In 1874, Milner sold 25 acres out of the southwest corner of the Bond tract, as surveyed and located on the ground by Gillespie in 1870.

(4) About 1868, Milner was in possession of the land claimed by appellant as being the Bond tract, using it for sawmill purposes, and about that time put a man named McIntire in possession, promising to sell him about 12 acres out of the southeast corner of the Bond tract, as surveyed and located on the ground by Gillespie in 1870. McIntire at that time went on the land, locating in the southeast corner, claiming to the east line of the Bond tract, as located by Gillespie, and to the south boundary line of the Bond tract, as located by Gillespie; this south boundary line being on the original south boundary line of the Noland league.

(5) While McIntire was on the land, holding for Milner, those under whom appellees claim were cutting the timber on the Gray land, and cut across the east boundary line of the Bond, as claimed by appellant, but when McIntire pointed out the east boundary line of the Bond tract, as located by Gillespie, they recognized it in their cutting of the timber, and ceased cutting on the Bond tract as claimed by Milner at that time.

(6) There are other gullies besides the Kennedy gully on the south side of the Hall (Green) bayou, but it does not appear that any oak tree was located near them corresponding to the description in the field notes of the Bond tract.

(7) Noland sold land west of the Bond tract, calling for the Bond in describing it. That land has been located in reference to the location of the Bond by Gillespie in 1870, and such location has long been acquiesced in by all interested parties.

## Opinion.

Appellees concede that the ambiguity in the deed from Eli Noland to Fitz Henry Bond is not patent, but only latent. In fact, Judge Neill so held in Gorham v. Settegast, 44 Tex. Civ. App. 254, 98 S. W. 670.

[1-3] We believe that the testimony offered, developing the issues as above stated, was sufficient to raise an issue in favor of appellant as to the correct location of the northwest corner of the Bond tract. As the Bond deed was duly recorded before Noland's administrator made the deed to Peter W. Gray, and was not unintelligible, as a matter of law, Gray was not an innocent purchaser against the description in the deed. The record of that deed put him and those holding under him upon notice of the Bond title. If due diligence and reasonable inquiry by Gray and those holding under him would have shown that the Kennedy gully and the oak described by Gillespie in his field notes to the Bond tract were the ones referred to in the field notes made by Noland to Bond, then appellant should recover, if in fact they locate the northwest corner of the Bond tract.

Without discussing in detail the facts on the issue of 10-year limitation, we believe the most that could be said in appellant's favor was that that issue was raised.

[4] We cannot sustain the instructed verdict for appellees on their proposition:

"As the defendant's title emanated from a contract entered into by the owner of a land certificate with Alston to locate the land cer-

tificate which was duly assigned by Alston to Judge Peter W. Gray, and contract was finally complied with by him, Judge Gray's one-third interest in the land vested as soon as Noland's interest in the land vested by the location of said certificate, and the parties holding under said Noland were bound to take notice of Judge Gray's interest."

Giving full effect to the recitations in the administrator's deed as to the contract between Noland and Austin, it appears that neither Austin nor his assignee, Gray, had a legal title to any part of the Eli Noland league until long after the Bond deed had been executed and recorded. The burden, therefore, rested on them to show that Bond bought with notice of their interest. Appellee's brief shows no effort to meet that burden.

The judgment of the trial court is reversed, and this cause remanded for a new trial.

### On Rehearing.

Appellees make the following prayer in their motion for rehearing:

"We respectfully move the court that they reconsider the opinion rendered in this case and that the judgment of the trial court be affirmed.

"If such relief is not granted, we pray that the opinion be modified so as not to constitute a direction to the trial court to admit evidence which is clearly inadmissible under an unbroken line of authority."

It is not our purpose to give any instructions to the trial court on the admission or rejection of evidence. No such issue was presented on this appeal. Our conclusions on the issues discussed were based on the statements made in the briefs of the parties, as we understood them. The statement of facts in this case contains 120 pages. It is not our duty to check through this statement of facts to verify appellant's statement when not contested. Complaint is also made of our description of the land in controversy as being "a part of a 300-acre tract deeded by Noland to Fitz Henry Bond," and as being a part of the 275 acres conveyed by Milner and his attorney in fact to appellant. We should have made the statement clear that such was the contention of appellants, and not as an absolute conclusion of fact.

In all other respects the motion for rehearing is overruled.