## LATON v. BALCOM.

The husband of a mortgagee of land cannot acquire title to the mortgaged premises, as against his wife, by purchase at a tax sale thereof.

WRIT OF ENTRY. Facts found by a referee. The plaintiff claimed title by virtue of the levy of an execution in favor of his ancestor upon the right of one Marden to redeem the premises from a mortgage to the defendant's wife, and payment of the amount due on that mortgage, made after judgment had been obtained by her in a suit to foreclose it. The levy was made August 24, 1881, and the payment of the mortgage by the plaintiff's ancestor September 15, 1882. The judgment to foreclose the mortgage was obtained by Mrs. Balcom at the May term, 1882.

The defendant claimed title by virtue of a sale to him of the premises for taxes assessed thereon to the mortgagor, Marden, for the year 1880. The tax for which the premises were sold was valid, and the sale in all respects regular and legal. The collector's deed to the defendant was dated May 13, 1882. The mortgage from Marden to Mrs. Balcom was dated September 3, 1872.

*C. H. Burns,* for the plaintiff, cited *Brown* v. *Simons,* 44 N. H. 475; *Fair* v. *Brown,* 40 Iowa 209, 210; *Garretson* v. *Scofield,* 44 Iowa 35, 37; *Austin* v. *Barrett,* 44 Iowa 488; *Burns* v. *Byrne,* 45 Iowa 285, 288; *Busch* v. *Huston,* 75 Ill. 343; *Rothwell* v. *Dewees,* 2 Black U. S. 613; *Perry Trusts, s.* 178; *Monroe* v. *Twisleton,* 2 Peake 219; *Stein* v. *Bowman,* 13 Pet. 223; *Parker* v. *Brown,* 15 N. H. 184; *Stantons* v. *Thompson,* 49 N. H. 272, 274; *Clark* v. *Clark,* 56 N. H. 105, 113; *Woodbury* v. *Swan,* 58 N. H. 381; *Bank* v. *Weeks,* 59 N. H. 239; *Bacon* v. *Goodnow,* 59 N. H. 415.

*A. F. Stevens* and *C. W. Hoitt,* for the defendant. The property of the defendant's wife was wholly separate from that of the defendant. The marital relation did not prevent the purchase by the defendant. "It is during the coverture in no manner subject to marital rights. The whole estate, legal and equitable, is vested in her, subject to her control and disposition as if she were unmarried." *Bridges & Woods* v. *McKenna,* 14 Md. 266.

"There is no legal duty on the part of either, growing out of the marriage relation alone, to purchase property for the benefit of the other." *Gilfillan,* C. J., in *Baker* v. *Baker,* 22 Minn. 362.

The enactment of statutes recognizing the separate existence of a married woman by securing her property to her exclusive use, and by conferring upon her the power of entering into contracts respecting her property and of disposing of it independently of her husband, has changed the common law in that respect. "They two are no longer one, and he that one." *Matteson,* J., *Bank* v. *Greene,* 14 R. I. 1. It is difficult to conceive what terms the legislature could have used to show more unmistakably their intention to obliterate entirely, in this respect, the idea of the common law, that husband and wife are a legal unit. *Ladd,* J., *Clough* v. *Russell,* 55 N. H. 280, 281.

"Husband and wife cease to be one; they are two distinct persons with distinct and independent rights." Schouler on Husband and Wife, *s.* 185.

*Campbell,* J., in *Buckley* v. *Wells,* 33 N. Y. 523, defines the status of man and wife as follows: " If the law allows the wife to hold property in her own right, she must be permitted to manage it. As to that separate estate, she and her husband are as distinct before the law as if the marital relation did not 'exist, and may deal with her husband as with a stranger." Our own court has treated husband and wife as strangers in the management of her property; she possesses the same rights and powers, and is entitled to the same remedies at law and in equity in respect to such property, as if she were sole and unmarried. *Albin* v. *Lord,* 39 N. H. 196. She can treat with her husband as to her property as two men, or an unmarried man and woman. *Noyes* v. *Hemphill,* 58 N. H. 538.

The husband could not join his wife in an action on the mortgage; he had and could have no control over it. When she died the cause of action would not survive to him as her husband, but the right of action and right of property would pass to her legal representative. *Cooper* v. *Alger,* 51 N. H. 175. In *Whidden* v. *Coleman,* 47 N. H. 300, *Sargent,* J., held, in an action of trespass to land, that the husband should not be joined, giving as the second reason therefor, " because, in a case of that kind, the husband has no interest whatever in the suit, and hence should not be joined as a party to it any more than any stranger." Husband and wife may contract together, the common law in this particular having been wholly changed by the statute. *Clough* v. *Russell,* 55 N. H. 280. The wife may lease her land to her husband. *Albin* v. *Lord, supra.* Either party may maintain a suit at law against the other. *Clough* v. *Russell, supra.*

BLODGETT, J. To preclude a person from acquiring a valid tax title, he must be under some legal or moral obligation to pay the tax, or there must be something in his contract or fiduciary relation to the owner of the property which renders it inequitable, as between them, that he should acquire the title. *Brown* v. *Simons,* 44 N. H. 475, 477, 478; *Woodbury* v. *Swan,* 59 N. H. 22; *Kezer* v. *Clifford,* 59 N. H. 208; *Blackwood* v. *Van Vleit,* 30 Mich. 118, 121; *Moss* v. *Shear,* 25 Cal. 38; *Bowman* v. *Cockrill,* 6 Kan. 311, 336; Cool. Taxation 346–348. Owing the plaintiff's ancestor no duty in respect to the delinquent tax, and standing in no contract or fiduciary relation with him, there was nothing precluding the defendant from acquiring a valid title to the land in suit as against him; and there being no defect in the proceedings pertaining to the tax sale, the effect of the defendant's purchase was to extinguish the ancestor's existing title. *Eastman* v. *Thayer,* 60 N. H. 408, 418.

Applying the like principles, the defendant was precluded from becoming a purchaser of the land for his own benefit, as against his wife.   The obligations and duties of husbands and wives to each other, both express and implied, create such relations of trust and confidence between them that neither can acquire the other's property by a clandestine payment of taxes.   Such a seizure of each other's estate, alike inequitable and shocking to the moral sense, is believed to be unsupported by any adjudged case, and would be a palpable violation of the marital contract, which, from its very nature, creates a mutual right of faith in the constant regard of each for the interests and welfare of the other.   In this respect husband and wife are still a legal unit; for while the legislation on which the defendant relies has greatly enlarged the property and civil rights of the wife, and materially diminished the liabilities and the powers of the husband, it has proceeded on the ground of equal right of personal liberty, and of ownership and control of property, and not on the ground of dissolving or in any degree impairing the relations of trust and confidence which marriage presupposes, and which are made by the marital contract an essential part of the marital relation.

In the progress of society juster notions of the nature of the marriage contract have obtained, and accordingly the theory of servitude formerly attaching to the status of the wife has been superseded by the theory of equality.   Her legal existence is now recognized.   She may hold property, earned, purchased, inherited, or devised, for her own benefit.   She may contract and sue and be sued in her own behalf.   Her civil rights are no longer subject to her husband's control.   She may exercise the right of suffrage in educational matters, and be elected to any school office.   But there is nothing in the series of statutes by which her rights and privileges have gradually approximated an equality with those of her husband that abrogates the marital rights of trust and confidence incident to the relation in all stages of society.   On the other hand, the existence and continuance of these relations are recognized and enforced in the statute rendering husband and wife competent witnesses for and against each other, by expressly excluding them when their testimony " would lead to a violation of marital confidence" (G. L., *c.* 228, *ss.* 20, 21, *Clements* v. *Marston*, 52 N. H. 31) ; and the progress of common law has been in the same direction, in accordance with the advance of popular intelligence by which it has been moulded.

The obligations, the disabilities, and the privileges, inherently consequent upon the marriage union, remain unchanged.   The contract, stipulatory or consensual, still is " for better for worse, for richer for poorer, in sickness and in health, to love and to cherish."   And although " they two are no longer one, and he that one," in respect to property, they still have interests, direct and indirect, in each other's estates, and these interests alone, like those

of partners and tenants in common, are sufficient to prohibit such an adverse resort to a tax title by either as in the fair understanding of both would be a breach of marital faith. But apart from mutual interests of property, which are of but secondary importance, such a breach of faith is a legally impossible destruction of that relation of trust established by the marriage, and which society has even more interest in preserving than the parties themselves. While unjust disabilities of the wife have been removed, there are implied stipulations of the contract which each party remains justly disabled to violate.

*Judgment for the plaintiff.*

BINGHAM, J., did not sit: the others concurred.