### W. T. OVERBY ET AL. V. J. P. JOHNSTON ET AL.

Decided March 17, 1906.

**1.—Pedigree—Declarations—Relationship of Declarant.**

Where it is sought to prove relationship between A. and B. the declarations of a deceased relation of either A. or B. are competent testimony. All that is required of the declarant is a connection with either one or the other, but not with both. The rule laid down by Greenleaf as follows: "That the law resorts to hearsay evidence in cases of pedigree upon the ground of the interest of the declarants in the person from whom the descent is made out, and their consequent interest in knowing the connections of the family. The rule of admission is therefore restricted to the declarations of deceased persons who were related by blood or marriage to the person, and therefore interested in the succession in question," held, not the proper rule.

**2.—Same—Prerequisites.**

The prerequisites to the admission in evidence of declarations to prove matters of family history are, first, it must be proved by evidence aliunde the statement itself that the declarant was related to the family about which he spoke; second, that the statements were made *ante litem motam;* and, third, that the declarant is dead.

**3.—Land Certificate—Alienation—Void.**

Where it appeared on the face of a donation warrant that the land located under it could not be alienated during the lifetime of the grantee a lease of such land for 99 years was a violation of the statute on that subject, and was absolutely void.

**4.—Laches—Legal Title.**

The doctrine of laches has no application as against a legal title.

ON REHEARING.

**5.—Recovery on Warranty—Title by Limitation.**

A vendee of land is not entitled to recover against his vendor on a covenant of warranty of title when the vendor's title, though originally bad, is perfected by limitation by reason of the vendee's possession. The vendee can only recover for the land actually lost.

Appeal from the District Court of Haskell County. Tried below before Hon. H. R. Jones.

*S. W. Scott,* for appellants.—Hearsay evidence, such as the declarations of deceased persons, is inadmissible to prove matters of pedigree and family history, such as birth, death, marriage, etc., until it is first shown that the declarant was related either by blood or marriage to the person about whom the declarations were made. Stephen's Digest of Evidence, p. 74, sec. 2 and note 4 thereto; 1 Greenleaf on Evidence, par. 103; Northrop v Hale, 76 Me., 306; Haddock v. Boston & M. R. Co., 3 Allen, 298; Connecticut Life Ins. Co. v. Schwenk, 94 U. S., 593, 598.

The court erred in rendering judgment for plaintiffs, because they did not make out by competent proof a case showing that they were the nearest living heirs of George J. Johnstone, and entitled to inherit from him in preference to all other persons. Leland v. Eckert, 81 Texas, 229; Payne's Adm. v. Payne, 70 Am. Dec., 404; Stinchfield v. Emerson, 83 Am. Dec., 524; French v. McGinnis, 21 S. W. Rep., 942; 14 Cyc. p. 98, Text D. & note 41; 2 Greenleaf on Ev., sec. 354.

*H. G. McConnell,* for appellees.—Facts of death, birth, marriage, pedigree and relationship are properly proved by declarations of a member of the family after proof showing that the declarant is dead. Mutual Life Ins. Co. v. Blodgett, 8 Texas Civ. App., 56; Nunn v. Mayes, 9 Texas Civ. App., 368; Boone v. Miller, 73 Texas, 557; Summerhill v. Darrow, 94 Texas, 75; DeLeon v. McMurray, 5 Texas Civ. App., 283; Smith v. Kenney, 54 S. W. Rep., 801.

SPEER, ASSOCIATE JUSTICE.—The following statement of the nature and result of the suit is made by appellants and concurred in by appellees:

"This was an action of trespass to try title, wherein appellees sued appellants for the title and possession of the George J. Johnstone 640 acre survey, situated in Haskell County, Texas, and located by virtue of donation warrant No. 225 issued to said Johnstone on May 26, 1838, for having fought in the battle of San Jacinto. Appellees set out and pleaded specifically the title of defendants, alleging that it was void, but asking that in the event defendants should be found to have any equities, for the court to find the value thereof and offering to satisfy any finding of the court in regard thereto, a reasonable time for that purpose to be allowed.

"Defendants Overby pleaded a general demurrer, general denial and plea of not guilty; five years limitation; improvements in good faith and that they purchased the land in suit from Heber Stone, M. L. G.

Stone and Ann M. Giddings, receiving a general warranty deed therefor, and impleading these parties on their warranty, and suggesting the death of Mrs. Giddings and that the Stones were her independent executors and legal representatives. The Stones adopted as their own the answer of the Overbys, admitted their liability on their warranty if the land in suit was lost; pleaded an implied locative contract between George J. Johnstone and R. M. Williamson, to whose rights defendants were subrogated by virtue of subsequent conveyances, by reason of which plaintiffs, if they recovered the land, became liable to pay defendants the value of one-half the land for locative services, as well as for reimbursement for the taxes paid on the land, from time of the location of the certificate down to the time of trial, and also for repayment of the $100 consideration and interest thereon, paid by R. M. Williamson to G. J. Johnstone on May 30, 1838, when the latter gave Williamson the 99 years lease on the land.

"It was also set out and pleaded that by reason of their acquiescence in the possession of the certificate, the location of the land, payment of the taxes, and claim of ownership of the land, accompanied with the possession thereof by defendants, that the plaintiffs were precluded and estopped from recovering the land.

"The judgment of the court was in favor of the plaintiffs for the land sued for; in favor of the defendants, W. T. & C. T. Overby for $957.50 for the value of improvements made in good faith; that plaintiffs should pay to the clerk of the court $610.60, being the original consideration paid by R. M. Williamson to George J. Johnstone, with interest from May 30, 1838, to time of trial, and that until said money was so paid, plaintiffs should not have their writ of possession; also that defendants Overby recover from Heber and M. L. G. Stone the sum of $640, being their cash payment for the land, to secure repayment of which they were given a lien on the $610.60 required to be paid by plaintiffs, and the purchase money notes given by Overbys for the land were cancelled."

At the threshold of the discussion of the assignments of error in this case, we are confronted with the most serious question of whether or not appellees have shown themselves to be the nearest living heirs of George J. Johnstone, deceased, and therefore entitled to inherit from him in preference to all others. Whether or not they have shown such fact depends upon the admissibility in evidence of the declarations of one Edmond Finch, deceased, a "great-uncle" of appellee J. M. Johnston, through whom, as a witness in the case, such declarations were reproduced. The testimony of this witness, tending to show that the grantee George J. Johnstone, left no heirs in the descending line, and which therefore supported appellees' claim to a right of collateral inheritance, was, "I learned through Uncle Edmond Finch that George J. Johnstone was never married and that he died in Texas." Now, it is objected that this evidence being hearsay, though the declarations of a deceased person, is inadmissible to prove matters of family history, etc., until it is first shown that the declarant was related either by blood or marriage to the person who died seized. If this proposition be correct, it is too clear for argument that the declarant Edmond Finch is not shown by the record to be related to the propositus George J. Johnstone.

As a great-uncle, Edmond Finch may have occupied any one of seven positions in the family tree of the witness J. M. Johnston.

The declarant being named Finch, of course could not have been a brother to the witness's paternal grandfather, but may have been a brother to the witness's maternal grandfather, or to either of his grandmothers. Moreover, he necessarily had four chances of being the husband of the witness's great-aunt. In at least four of these contingencies the declarant would not have been related by blood or marriage to George J. Johnstone, and the proposition above being correct, the case would have to be reversed for failure of appellees as plaintiffs to show their right to a recovery of the land. (Leland v. Eckert, 81 Texas, 226; French v. McGinnis, 21 S. W. Rep., 941.) But the question recurs, Is the proposition that the declarant must be shown to be related to George J. Johnstone sound? Greenleaf (14 ed., sec. 103) declares "that the law resorts to hearsay evidence in cases of pedigree upon the ground of the interest of the declarants in the person from whom the descent is made out, and their consequent interest in knowing the connections of the family. The rule of admission is therefore restricted to the declarations of deceased persons who were related by blood or marriage to the person, and therefore interested in the succession in question." Both the reason and the rule thus laid down are quoted and approved by our Supreme Court in Fowler v. Simpson, 79 Texas, 611. The text is also quoted and applied by the Supreme Court of the United States in Blackburn v. Crawford, 3 Wall., 175, 18 L. Ed., 186. On the other hand, a much broader rule is laid down in the late work of Prof. Wigmore on Evidence, vol. 2, sec. 1491, as follows: "It follows in applying the foregoing principle that where an alleged relationship between Doe and Roe is to be testified to, a relation of Doe may speak to it, because it concerns the relationships of Doe's family, while a relation of Roe may equally speak to it, because it concerns the relationships of Roe's family; thence, all that is required of the declarant is a *connection with either one or the other,* but *not with both.* This truth, however, has been obscured by what must be regarded as erroneous rulings. The question being whether Doe is related to Roe (for example so as to share in Roe's inheritance), the argument has been that it would be idle to require merely that the declarant should be shown to be related to Doe alone, because then any family could connect itself with any other by its member's mere assertion of the relationship. But the proper way to approach the question seems to be a different one, and is as follows: Any member of Doe's line may declare as to the relationships (i. e., memberships) of that family, and any member of Roe's line may declare as to the relationships (i. e., memberships) of that family; and the qualifications of the declarant as such member, must of course be shown beforehand, like the qualifications of any witness." The author cites a number of decisions which support this broader rule, among which is the case of Sitler v. Gehr, 105 Pa. St., 577, which is especially valuable for its review of numerous cases bearing on this question. The conclusion of the court in that case as to the state of the authorities, is summed up in the following language: "It will be seen that those of them which bear upon this question at all do not go beyond the admitted principle that before declarations of

deceased persons can be received in questions of pedigree, the declarant must be shown aliunde to be related to some branch of the family as to which the declarations are offered," the decision being that witnesses were permitted to give in evidence declarations of a deceased person shown to be related to the plaintiff, but not to the person from whom the succession was sought to be made out. We think the rule laid down by Prof. Wigmore is supported by the better reason and should· be adopted in this State. The universally recognized prerequisites to the admission in evidence of such declarations to prove matters of family history are, first, it must be proved by evidence aliunde the statement itself that the declarant was related to the family about which he spoke; second, that the statements were made *ante litem motam*, and, third, that the declarant is dead. In this case the declarant Edmond Finch, being related to the appellee Johnston and therefor a member of his family and supposedly interested in knowing the history and affairs of such family, which would include its antecedents, his declarations made at a time when this cause of action had not arisen, ought upon every principle to be admitted in evidence. While the rule announced in Greenleaf and heretofore quoted has been construed in such manner as to support appellants' contention, and while, as already shown, it has been quoted with approval by our Supreme Court, yet we are not aware of any decision by that court involving the precise question under consideration, but on the other hand, the decisions, when the facts of each case are examined, appear at least to be not inconsistent with the views we have expressed. This is especially true of the cases of Fowler v. Simpson, *supra,* and Summerhill v. Darrow, 94 Texas, 71.

We now come to consider the question of laches on the part of appellees as a bar to their right of recovery. The land in controversy was located by virtue of a donation warrant issued on May 26, 1838, to George J. Johnstone for having fought at the battle of San Jacinto. The certificate showed on its face, as was then the law, that the land located under it could not be alienated during the lifetime of the person to whom it was granted. On July 30, 1870, George J. Johnstone executed and delivered to R. M. Williamson a lease and transfer of the certificate for a term of 99 years, and Williamson in turn transferred to J. D. and D. C. Giddings. Appellants claim through these transfers. As a matter of precedent it is well settled that the lease for 99 years was an alienation in violation of the statute, and therefore void. Ames v. Hubby, 49 Texas, 705; Williams v. Wilson, 76 Texas, 69. If the attempted conveyance by George J. Johnstone was absolutely void, as it must be held to have been, then the legal title rests in his heirs and the doctrine of laches finds no proper place in the case. This conclusion, that is, that the conveyance through which appellants claim is absolutely void, also disposes of appellants' contention that the court should have rendered judgment in their favor for an undivided one-third interest as compensation for locating the land certificate in Haskell County.

We think the judgment must be reversed and here rendered in favor of appellants for an undivided one-half interest in the land, however, upon their plea of title by five years limitation. On March 9, 1880, D. C. Giddings, the surviving partner of the firm of J. D. & D. C. Giddings, executed and delivered to Ann M. Giddings and M. Louise Stone,

surviving widow and daughter respectively of J. D. Giddings, deceased, a quit claim deed to an undivided one-half interest in the land in controversy, and this deed was filed for record October 8, 1890, in the office of the county clerk of Haskell County. All subsequent deeds under which appellants claim have been duly registered, all taxes have been paid, and the statute otherwise fully complied with by them, entitling them as above indicated to a judgment for one-half the land. It follows, of course, that the judgment in favor of the Overbys for the value of improvements made in good faith must be reversed and that matter left for determination in a future suit for partition, should the parties desire a partition. The judgment of the District Court is therefore reversed and here rendered in favor of appellants for an undivided one-half interest in the land in controversy, and that they take nothing in this suit upon their claim for improvements made in good faith, but in other respects it is affirmed.

*Reversed and rendered in part and affirmed in part.*

### ON REHEARING.

The motion for rehearing is granted to the extent that we reverse the judgment of the District Court wherein he gave the appellants, the Overbys, a judgment for $640 against appellants, the Stones, and canceled the five purchase money notes for $576 each, given by the former to the latter, and here render judgment in favor of the Overbys against the Stones for the sum of $320, and cancelling one-half of each of the said five outstanding purchase money notes. This would follow from our former decision, wherein we held the Overbys to be entitled to one-half the land in controversy under their plea of limitation. Having held the land, or one-half of it, they are in no position to recover against the Stones on their warranty beyond that portion from which they were evicted, and we think this is true, even though the Overbys prevailed by virtue of the plea of limitation rather than by virtue of any title received from the Stones. The case of Hebrew Education Soc. v. Bussier, 22 Pittsb. Leg. J., 126, which we have not access to, is quoted in 48 Cent. Digest, c 1278, as holding that a purchaser who has perfected his title under the statute of limitations, can not successfully defend against a suit for the purchase money, even though the title of his vendor was bad.

It is insisted that the item of $100 and interest, amounting to $610.60, which the appellees were required by the judgment below to pay to appellants, the Stones, as a condition precedent to their recovery, should have been awarded to the Overbys rather than to the Stones. The Overbys, however, have their full indemnification in their recovery against the Stones on the latter's warranty to the extent of the land lost, and if it were more regular to decree the return of the $610.60 to the Overbys, yet the Stones would in turn be entitled to a credit for this sum on their liability on the warranty, and this end has been substantially reached by the judgment rendered, which gives to the Overbys a lien on the amount to secure their judgment against the Stones.

*Motion granted in part and overruled in part.*

Writ of error refused.