MYERS *v.* MYERS.

1. TAXATION—LIFE TENANCY—OBLIGATION TO REMAINDERMAN.
    The duty to pay taxes rests upon a life tenant as between him and the remainderman.[1]

2. HUSBAND AND WIFE—TAXES—ADVERSE INTERESTS.
    A purchaser of a tax title by the wife of a life tenant, occupying the premises jointly with her husband, inures to the benefit of the remainderman to whom the life tenant owed the obligation to pay the tax.

3. HOMESTEAD—TAXES—HUSBAND AND WIFE—ESTATES.
    Premises occupied by the life tenant and his family as a

[1] As to duty of life tenant to pay taxes see note in 32 L. R. A. 744.

homestead may not be purchased at tax sale by the wife so as to divest her husband of his life interest, or the persons entitled to the remainder of their title.

4. SAME—MARRIAGE.

Neither husband nor wife may secure a tax title upon premises occupied as their joint homestead and defeat the interest of the other party to the marital relation.

Appeal from Lenawee; O'Mealey, J. Submitted April 14, 1915. (Docket No. 82.) Decided June 7, 1915.

Bill by Almond B. Myers and another against Danforth Myers and others to set aside a tax deed. From a decree for defendants, complainants appeal. Reversed.

*J. N. Sampson* and *Arthur P. Hicks,* for complainants.

*Baldwin, Alexander & Russell, B. L. Hart,* and *H. R. Jewett,* for defendants.

The bill of complaint in this cause is filed for the purpose of setting aside a tax deed dated June 15, 1894, by the terms of which the defendant Charlotte Myers secured title to 100 acres of land described therein. The facts upon which the controversy arises are, briefly, as follows: In the year 1865 the defendant Danforth Myers married one Susan Bates. Two children were born of this union—the two complainants in this case. Some time prior to the year 1882, Susan Bates Myers secured a divorce from the defendant Danforth Myers, and she and her two children took up their residence apart from the defendant Danforth Myers. In the year 1882, said Danforth Myers married the defendant Charlotte Myers, and as a result of this union four children were born, who

are the other defendants named in the bill of complaint. It appears that Nathan Myers, who was the father of Danforth Myers, left a last will and testament by the terms of which he devised to his son, defendant Danforth Myers, a life estate in 100 acres of land, which is the farm in controversy in this case. The remainder was devised by said Nathan Myers to the two complainants and to any other child or children of said Danforth Myers yet unborn, to be equally divided between them after the expiration of the life estate. Nathan Myers, the testator, died in the year 1887, and shortly thereafter defendant Danforth Myers with his second wife and such of his children by said second wife as were then in being went upon said farm, and from that time up to two or three years ago they have made said farm their home. During the last two or three years said defendant and his wife have not lived upon the farm, but it is in possession of their son, defendant Floyd, under some arrangement satisfactory to them. The record discloses the fact that defendant Danforth Myers was from early manhood addicted to the excessive use of intoxicating liquor. He seems to have been a fairly industrious worker, but his overindulgence in the use of intoxicants unfortunately resulted in his becoming shiftless and permitting things to go at loose ends about the farm. This course entailed upon his wife and family much suffering. His wife, defendant Charlotte Myers, was obliged to and did frequently seek employment of a menial nature in the houses of neighbors in order that she might secure money with which to clothe and feed her children at times when the dissolute habits of her husband prevented him from making suitable provision in that behalf. The taxes upon the farm were not paid for the year 1890. The place was advertised for sale and was bid in by the State. Defendant Charlotte Myers, through

her own labors and by sacrificing some articles of jewelry which she had owned before her marriage, was able to purchase the same 'from the State; which she did in 1894 at a cost of $44.88. Since that time the family, consisting of Danforth Myers, Charlotte Myers, and their four children, have continued to occupy the farm as before as their home, and the taxes have been paid by defendant Charlotte Myers. During the years following her purchase of the farm from the State, defendant Charlotte Myers was able to pay the taxes and preserve a home for herself, her husband, and her children, only with the greatest difficulty. The farm at the time she purchased the tax title was worth about $5,000, and at the present time is worth between $7,500 and $8,000.

Complainants charge in their bill of complaint that by permitting the taxes to go unpaid and the land to be sold to the State, and afterwards repurchasing it in the name of defendant Charlotte Myers, defendants Danforth Myers and Charlotte Myers have wrongfully conspired to rob them of their interest in the estate of their paternal grandfather. They further charge that whether entered into deliberately with the purpose of defrauding them, the transaction, if permitted to stand, will amount to a legal fraud upon their rights. The six defendants answer jointly and deny any fraudulent intent. They all insist, however, that by the purchase of the tax title from the State, defendant Charlotte Myers became in fact the sole owner of the farm in question, and that whatever interest complainants had therein under the will of their grandfather Nathan Myers has been cut off by such sale and purchase.

BROOKE, C. J. (*after stating the facts*). After a careful perusal of the record before us, we find no difficulty in agreeing with the finding of the learned

circuit judge that the defendant Charlotte Myers did not acquire the tax title as the result of an express agreement between herself and her husband, but that she did so for the sole purpose of preserving a home for herself and her children. She took the title in her own name instead of in the name of her husband, upon the advice of counsel, and it would seem probable that originally she had no thought of asserting an absolute ownership in the farm growing out of the deed to her from the auditor general. This position she takes now, however, and through her counsel asserts with confidence that she was under no disability at the time of the purchase which would prevent her from acquiring title from the State. On the part of the complainants it is urged that a wife, who with her husband is in possession of a piece of real estate in which the husband has a life estate, cannot become a purchaser of a tax title from the State which she could assert adversely to the interest of her husband or the remainderman. The proper solution of this question will dispose of the case, and in reaching a determination we think the peculiar hardship under which defendant Charlotte Myers acted at the time she made the purchase from the State should be wholly disregarded as not affecting the principle involved; it being conceded that she acted in good faith and without fraud

The exact question involved is without precedent in this State. In the case of *Ward* v. *Nestell,* 113 Mich. 185 (71 N. W. 593), Mr. Justice GRANT said:

"The law does not permit a husband to acquire a tax title adverse to the title of his wife. This tax title inured to her benefit just as conclusively as though he had taken the title in her name. It could not be made the basis of an adverse possession during her life"

—citing several cases, among them *Laton* v. *Balcom,* 64 N. H. 92 (6 Atl. 37, 10 Am. St. Rep. 381).

Mr. Justice MOORE, in writing what afterwards became the opinion of the court, said:

"I agree with Mr. Justice GRANT that the husband, while in joint occupancy of land with his wife, cannot acquire a tax title valid as against her."

In *Simons* v. *Rood,* 129 Mich. 345 (88 N. W. 879), Mr. Justice HOOKER, speaking for the court, said:

"It is inequitable for a husband to acquire title to the wife's premises by obtaining tax titles upon them. As to her, at least, they would be void. So, also, should they be as to her grantees or mortgagees, under circumstances like these. * * * If there was not collusion between the Roods in acquiring the title, Dearborn Rood paid the taxes for her; and in such case, or if the purchase was collusive, it was a fraudulent taking color of title, merely."

A somewhat similar question was considered in *Hubbard* v. *Shepard,* 117 Mich. 25 (75 N. W. 92, 72 Am. St. Rep. 548), and also in *Chamberlain* v. *Forbes,* 126 Mich. 86 (85 N. W. 253).

There can be no doubt concerning the rule in this State in a case where a husband attempts to acquire a tax title to his wife's property. This cannot be done even though the title is not asserted against the wife herself, but only against those who claim through her.

There remains for determination the question whether the rule applicable to husbands should apply to wives who thus seek to acquire title to property in which their husbands are interested. In this connection, an examination of the case of *Laton* v. *Balcom,* 64 N. H. 92 (6 Atl. 37, 10 Am. St. Rep. 381), twice cited with approval, will be found illuminating. The court there said:

"The obligations and duties of husbands and wives to each other, both express and implied, create such relations of trust and confidence between them that neither can acquire the other's property by a clan-

destine payment of taxes. Such a seizure of each other's estate, alike inequitable and shocking to the moral sense, is believed to be unsupported by any adjudged case, and would be a palpable violation of the marital contract, which, from its very nature, creates a mutual right of faith in the constant regard of each for the interests and welfare of the other. In this respect husband and wife are still a legal unit. * * * And although 'they two are no longer one, and he that one,' in respect to property, they still have interests, direct and indirect, in each other's estates, and these interests alone, like those of partners and tenants in common, are sufficient to prohibit such an adverse resort to a tax title by either as in the fair understanding of both would be a breach of marital faith."

In the case of *Nagle* v. *Tieperman,* 74 Kan. 32 (85 Pac. 941, 88 Pac. 969, 9 L. R. A. [N. S.] 674, 10 Am. & Eng. Ann. Cas. 977), it was held that in the absence of fraud a married woman could acquire a valid tax title upon the husband's property. A note to this case, found in 9 L. R. A. (N. S.) page 674, indicates that the decision not only overrules several previous decisions in Kansas, but is contrary to the weight of authority on the point in question. A strong dissenting opinion was filed in this case, the reasoning of which follows that used in *Laton* v. *Balcom, supra.*

In support of complainants' position, see, also, *Swift* v. *Agnes,* 33 Wis. 228; *Herrin* v. *Henry,* 75 Ark. 273 (87 S. W. 430); *Life Insurance Co.* v. *Day,* 127 N. C. 133 (37 S. E. 158); and *Sanders* v. *Ellis,* 42 Ark. 215.

As between defendant Danforth Myers and the remaindermen, there is no doubt that the obligation to pay the taxes during the life tenancy rested upon him. *Jeffers* v. *Sydnam,* 129 Mich. 440 (89 N. W. 42), and cases cited.

The homestead right, which is not only for the benefit of the owner but for that of his wife and

family as well (*Riggs* v. *Sterling*, 60 Mich. 643 [27 N. W. 705, 1 Am. St. Rep. 554]), attaches as well to a life estate as to an estate in fee. 21 Cyc. p. 504, and cases cited in note 60.

The farm in question was undoubtedly occupied as a home by all of the defendants both before and after the purchase by defendant Charlotte Myers from the State.

We are of opinion, after a careful examination of all the authorities touching this question, that it must be held that Charlotte Myers, by reason of her relationship to Danforth Myers and the duties and obligations arising therefrom, could not become the owner of a tax title upon a piece of property in which her husband was interested as life tenant, which she together with her husband and children were occupying as a home at the time said title was acquired. We perceive no reason why the rule applicable to husbands prohibiting them from acquiring tax titles upon the property of wives should not be applied to wives as well as husbands. The basic ground for the inhibition as to husbands is of equal validity as to wives.

The fact that her husband is not here complaining, but is apparently consenting, should make no difference in the conclusion. If her tax title is good, she has a right as against her husband to oust him from the possession of the property during his lifetime. To affirm such a right, we think, would tend to the destruction of the marital relation, as well as to the perpetration of fraud.

The prayer of the bill asking that the tax deed of June 15, 1894, be set aside and be declared void, as to complainants, must be granted, and, inasmuch as the deed obtained by said defendant Charlotte Myers from one Edwin Winne growing out of the foreclosure of a mortgage given by herself rests upon her

own title under the tax deed, that likewise must be canceled as to complainants.

A decree will be entered in this court to that effect, with costs of both courts to be taxed.

McALVAY, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred. BIRD, J., did not sit.