## MOORE v. MOORE. (No. 6406.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 13, 1920. Rehearing Denied Nov. 10, 1920.)

**1. Deeds ⬡70(6)—Wife, fraudulently induced to convey to husband, may sue to cancel deed.**

Where divorced wife, in anticipation of remarriage to former husband, agreed to convey a half interest in land in consideration for husband's promise to discharge a lien on the land, but was induced to sign deed reciting a different consideration relying on the promise that husband would do the right thing by her, her remedy, on husband's refusal to discharge lien, was not limited to a legal action, but, having been fraudulently induced to sign deed not reciting the real consideration, she could bring action in equity to cancel deed.

**2. Appeal and error ⬡931(3)—Facts necessary to sustain judgment will be presumed to have been found by court.**

It will be presumed on appeal that the fact necessary to sustain the judgment is found by the trial court.

**3. Deeds ⬡74—Wife held not estopped from canceling deed to husband.**

Where divorced wife, in anticipation of remarriage to former husband, conveyed a half interest in land to husband in consideration for an agreement to discharge lien on land, but executed deed reciting different consideration on husband's promise to do right, her delay in bringing suit to cancel deed on his failure to discharge lien did not estop her from canceling deed, where she received no benefits different from those any other wife receives from a husband from their joint or separate property, and where husband continued to promise that he would do the right thing, and she did not discover his fraud, and that he did not intend to discharge lien until shortly before suit was commenced, the cause of action not accruing until husband openly repudiated obligation.

**4. Husband and wife ⬡135—Wife not precluded from canceling deed to husband by tax sale and purchase by husband from tax sale purchaser.**

Wife, who conveyed half interest in property to husband, was not precluded from bringing action to cancel deed by the fact that land had been sold for taxes and resold by tax sale purchaser to husband, since a deed to husband may be treated as redemption deed, and inured to wife's benefit.

**5. Limitation of actions ⬡73(7)—Wife not barred from canceling deed to husband.**

Under Rev. St. art. 5708, wife is not barred by limitations from bringing action against husband to cancel deed to husband, since, being under coverture, there were no limitations running against her.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Suit by Helen Moore against S. C. Moore. Judgment for plaintiff, and defendant appeals. Affirmed.

J. M. Mothershead, of Ft. Worth, for appellant.

Dougherty & Dougherty and G. C. Robinson, all of Beeville, for appellee.

COBBS, J. This suit was filed by the appellee to cancel that certain deed made by her to appellant on the 29th day of January,

1912, conveying to appellant the undivided one-half of 225 acres of land in and out of the large tract or grant of land, together with the improvements known as "Concepcion de Carricitos," originally granted to E. and B. Fernandes, situated in Cameron county, described by field notes in the deed, reciting a consideration of $1 and other good and valuable considerations and the assumption of $15,000 against said property, which said deed also conveyed live stock and other personal property of considerable value on said place.

The land is irrigable. Appellee alleged the agreement and understanding, in pursuance of their approaching marriage, was that if she would convey to him, the appellant, an undivided half interest in said land, he would assume, agree, pay off, and discharge the whole of said indebtedness of $15,000. The deed was to be made before their marriage, and which was consummated the very next day. The alleged value of the land was placed at about $45,000.

The cancellation of the deed is sought upon the ground of fraud in procuring its execution and delivery and misrepresentation upon the promise of marriage and the promise to pay off and discharge the $15,000 debt secured by a lien upon said land. That the deed was prepared by appellant's own attorney and agent, under his specific direction, to be presented to appellee, by appellant's agent and attorney, who was also her attorney, and directed to procure said deed and take her acknowledgment and deliver deed to him. After presenting said deed for execution, and before signing, she discovered that it conveyed her personal property and live stock, and to only assume the payment of one-half of the $15,000. Whereupon she refused at first to sign it, as it was not in accordance with their agreement, but upon the representations made by the agent appellant was induced to execute the deed.

Appellant and appellee had previously been married to each other, and lived together as husband and wife, but had been divorced. Having become reconciled, they agreed to remarry. Later, appellant placed the condition upon their proposed happy reunion that she should convey to him an undivided one-half of the land, and he agreed to pay the $15,000. With this understanding they parted, to become once more husband and wife when the deed should be executed and delivered. When the deed was prepared, and shown to her, under his direction, for execution, it was discovered he had placed yet another subsequent and unconsidered condition ere he would enter that blissful state. He now places personal property and live stock in the deed, and recites he is to only pay and assume to pay one-half of the $15,000 debt instead of the whole. Here she declined to go further. But by representations made by defendant's attorney to her that it was all right, for it was appellant's purpose to carry out the real agreement to pay the $15,000 agreed upon, she was induced to sign and acknowledge the deed. She testified:

"I had confidence in Mr. Moore that he would do the right thing. Our marriage was impending, and I knew he would do the right thing by me."

He had been her husband and they were about to marry, and their relations were of such a character of confidence as gave her the right to trust and rely upon him. Immediately, on the next day after the execution and delivery of the deed, they were married.

Neither is seeking a divorce in this case, but appellee brings this suit because of appellant's repudiation of his contract and refusal to pay or assume the payment of the note and repudiation of the contract in its entirety, thereby compelling her to resort to a court of equity for protection and relief. That he abuses and continues to abuse and take advantage of her confidence and trust, and holds said property under said deed, which is of great value, having overreached and taken an advantage of her through said deed, which he well knew not to be in accordance with their solemn agreement.

Appellant filed exceptions, pleas, answer, and cross-bill, seeking to be quieted in his possession and to recover the land. All pleas and exceptions were overruled. The case was heard by the court without a jury, and resulted in a judgment in favor of appellee, canceling the deed, and denying appellant any relief on his cross-action.

Appellant's first assignment and propositions, as well as other succeeding ones, contend that, the deed being absolute in form, with the terms of general warranty, there can be no condition subsequent, as its breach is of a covenant for which only an action for damages will lie or suit to reform or for specific performance. We do not believe the contention has any application here. Appellant contends that if the deed contained the obligation to pay the $15,000, and he refused to do so, then it would be a breach of the covenant, and this suit could not be maintained, or if the agent was authorized to say to her he would pay the $15,000, and he afterwards refused to pay it, it would be a breach of a moral obligation, and no suit can be maintained to cancel the deed.

[1] These two illustrations clearly indicate the viewpoint of appellant. Neither one reflects the principles in this case. In the first illustration a case is stated free from fraud, and so in the second by stating a case of breach of an obligation, made through his agent merely, without fraud used in its procurement, called by appellant a moral obli-

gation. The express agreement upon which the conveyance was to be made and the marriage to be consummated was not, as agreed, written in the deed, but another and different consideration was put in the deed by his direction, and she was induced to sign that deed, relying upon the promise made that he would do right. Therefore there is in that deed a consideration not made by her, which takes her property, and she is not, under the facts in this case, relegated to a legal action for relief to compel him to perform his contract while all her property stands charged with a lien to secure the payment of the entire indebtedness because of his alleged breach of a moral obligation, and he holding the title to her property, never before or afterwards intending to pay the $15,000 or any part thereof.

The right to cancel a deed because obtained through fraud or breach of confidence growing out of trust relations such as those existing between husband and wife, and on account of which relations of trust and confidence he has fraudulently obtained an unfair advantage through a deed, is well established. It is one of the fondest principles of equity jurisprudence to bring the malefactor to account and require him to turn loose and restore all that he has secured through the fruits of his wrong, particularly so if it be a transaction growing out of a contemplated marriage, the basis of the contract, or in respect to that which transpired during such sacred relation. 13 Ruling Case Law, 1034; 2 Pom. Eq. Jur. (4th Ed.) §§ 956–963; Hallett v. Fish (C. C.) 120 Fed. 988; Goar v. Thompson, 19 Tex. Civ. App. 330, 47 S. W. 63; Wyatt v. Chambers, 182 S. W. 17; C., T. & M. C. Ry. Co. v. Titterington, 84 Tex. 223, 19 S. W. 472, 31 Am. St. Rep. 39; Mott v. Mott, 49 N. J. Eq. 192, 22 Atl. 999; Burgess v. Burgess, 201 Ala. 631, 79 So. 194; Braddy et al. v. Elliott, 146 N. C. 578, 60 S. E. 507, 16 L. R. A. (N. S.) 1122, 125 Am. St. Rep. 523; 18 Corpus Juris, p. 232, § 154h; Russell v. Russell (C. C.) 129 Fed. 435; Schuler on Domestic Relations, 271; Adams v. Huffmaster, 42 Tex. 17.

[2] All the facts were before the court, and the presumption here on his general finding is that every fact necessary to sustain the judgment has been found by him, so we see an advantage has been improperly taken by appellant over appellee, his wife, by his deceit and fraud. The agent, his attorney, knew appellee would not sign the deed as written. To do so, he persuaded her appellant would do right. She says she relied on that statement and the confidence she had in the man soon to become her husband. She had the right to do so, and, further, that the faithful attorney would tell his client what he had said and done in his behalf, as he was authorized to secure the deed and directed to deliver it to him before the marriage. The court found by this

transaction, in effect, appellant got an undivided interest in 225 acres of irrigable land worth between $300 and $400 per acre; buildings and improvements thereon; all crops then standing and growing; all farm implements and utensils, live stock, and other personal property thereon; then the six large mules valued at from $150 to $200 each.

[3] We cannot sustain appellant's contention that appellee is estopped by her failure to sooner bring this suit, because she received benefits from his labor and revenues from his separate property, for he constantly promised to do right, and the use of the property and relation was such as to prevent an estoppel. There are no benefits that she received that are different from those any other wife receives from a husband from their joint or separate property. But the real consideration of the deed was never paid, but, on the contrary, appellee refuses to pay any part of the $15,000, and for that reason there are no benefits growing out of the transaction itself that would require a repayment precedent to her right to invoke the equitable powers of a court of chancery. It was in the power of appellant to stop the suit for cancellation at any time by paying the $15,000, but, on the contrary, he not only does not pay the $15,000, but refuses to do so, and in fact the appellant never intended to.

It is true appellee knew when she signed the deed that it did not speak the true agreement, and it was at first for that reason refused until the representations made to her by appellant's agent induced her to sign, and she did not know until long after their marriage that he would not carry it out. He always told her he would pay the $15,000. She did not discover his fraud, and that he never intended to carry it out, until long afterwards, to wit, November, 1916, when he refused to do so.

It is a significant fact that his lawyer, who secured her deed upon his representations, be it to his credit, years afterwards, when he learned of appellant's repudiation, voluntarily prepared a deed and tried to get appellant to reconvey it, which appellant refused to do, but stated he would do the right thing by Mrs. Moore, but never did. He was the notary who took the acknowledgment, and the same person appellant employed to prepare the deed under appellant's instructions, and secured the signature, and upon whose representations she was induced to sign and by whose acts in the premises he is bound. It is to be presumed in this case the agent disclosed to appellant, as it was his duty to do, all that was said by him and appellee at the time. He did not occupy the position of a mere conveyancer. He was more. He was appellant's representative. He was the attorney and adviser of appellant. He was selected for this purpose. He drew the deed under direction of

appellant, and under his direction sought the appellee and secured her execution to him of this deed, and then prior to the bringing of this suit attempted to get him to do right by reconveying this property. The wife had the right to rely on the fact that the husband would ultimately do right, and there are no laches or estoppel that can defeat her right to bring this suit and those assignments are all overruled. · The cause of action did not accrue until the appellant openly repudiated his obligation. She could not know that he never intended when he made the agreement to carry it out.

[4, 5] The claimed error, if any, in permitting a judgment against appellant on his cross-action because of the proceedings introduced from district court, Cameron county, No. 290, by the state of Texas in behalf of Cameron county drainage district No. 3 showed a sale of the property for taxes, year 1912, against 225 acres of land, in which the plaintiff, Helen Moore, and S. C. Moore et al. were defendants, showing conveyance of said land at public auction to E. E. Dickson, dated March 6, 1914, filed for record June 8, 1918, and deed from E. E. Dickson to S. C. Moore, conveying same property by deed April 17, 1916, which conveyed the property of the defendant to S. C. Moore as community property, and purchased by him for protection of the title. This was not error. The title thus acquired simply continued the status as between appellant and appellee. It may be treated as a redemption of the property upon paying the penalties and dues, which were a community debt. We can see no error in the ruling of the court. The status of the title is not changed, nor is the $15,000 note thereby discharged. The appellant being the husband of appellee, if any title passed by that forced sale, the deed to appellant may be treated as a redemption deed. At any rate, it inured to her benefit. Simons v. Rood, 129 Mich. 345, 88 N. W. 879; Laton v. Balcom, 64 N. H. 92, 6 Atl. 37, 10 Am. St. Rep. 381; Burns v. Byrne, 45 Iowa, 285; Manning v. Coal Co., 181 Mo. 359, 81 S. W. 140; Denson v. Love, 58 Tex. 471; Overby v. Johnson, 42 Tex. Civ. App. 348, 94 S. W. 131. As long as that obligation existed to pay the $15,000, part of the purchase price, there existed the trust relation of vendor and vendee. The appellant was in possession, and the fiduciary relation continued. She was a grantor with a superior lien, and Dickson nor any other person ever threatened to evict him. She did not disturb his possession. The relation of vendor and vendee, though husband and wife, existed between the parties, and could continue until the $15,000 was paid. She was a married woman, his wife, and under coverture, and there were no limitations running against her. R. S. art. 5708. Substantial

justice has been obtained by the judgment of the trial court, and we do not feel justified in changing the decree. We have not mentioned each assignment discussed by number or in the language employed, but have considered each, and in most cases discussed them separately. We can see no error assigned that should cause a reversal, and they are each overruled, and the judgment of the court is affirmed.